818 P.2d 320

**Douglas Frederick WALTON and Janet Walton, husband and wife, Third-party Plaintiffs–Respondents,**

**v.**

**HARTFORD INSURANCE COMPANY, Third-party Defendant–Appellant.**

**Nos. 17956, 18212.**

Supreme Court of Idaho, Moscow, April 1990 Term of Court.

Sept. 25, 1991.

Evans, Craven & Lackie, P.S., Coeur d'Alene, for third-party defendant-appellant. Jarold P. Cartwright argued.

Thomas A. Mitchell and John T. Mitchell, Coeur d'Alene, for third-party plaintiffs-respondents. Thomas A. Mitchell argued.

BISTLINE, Justice.

The Hartford Insurance Company (Hartford) appeals solely to challenge the district court's award of attorney fees to the Waltons. The Waltons appeal to challenge the district court's ruling which allowed attorney fees in an amount less than claimed, and which denied prejudgment interest. We reverse on the denial of prejudgment interest. We remand to the district court for reconsideration and a redetermination of the amount of fees to be awarded to the Waltons.

## I. FACTS AND PROCEEDINGS BELOW

The district court's statement of the facts is helpful to a discussion of the issues:

On September 7, 1986, there was a collision on Highway 41 in Kootenai County involving the 1984 Toyota owned and operated by Douglas Walton, a 1985 Ford owned and operated by John Eckman, Mr. Walton's father-in-law, and a 1984 Honda driven by Billy Jo Henderson. Jake Walton, age 12, the son of Douglas and Janet Walton and the grandson of John Eckman, was a passenger in the Eckman vehicle. Jake Walton was killed in the collision.

On December 4, 1986, suit was filed by the Hendersons for injuries received in the accident. The vehicle driven by John Eckman had collided with the rear of the Walton vehicle when it slowed for a left turning vehicle which had stopped in the roadway because of oncoming traffic. After the Eckman vehicle slammed into the back of the Walton vehicle, it swerved into the oncoming lane where it was struck by the Henderson vehicle. Although Eckmans had liability insurance, the policy limits were $100,000.00.

The Waltons carried liability insurance, *including underinsured motorist coverage* with the Hartford. The Hartford was informed by letter on January 6, 1987 that Waltons had a claim under

their own policy. The Hartford acknowledged that letter on February 3, 1987. Thereafter, on February 25, March 6, and June 16, 1987, the Waltons urged the Hartford to negotiate. On April 9, 1987, the Waltons offered to settle for $170,-000.00, within $4,000.00 of the amount awarded by arbitration.

R.Vol. 2, 65–66 (emphasis supplied). In addition to the death of Jake Walton and the injuries suffered by Douglas and Janet Walton, there were very serious injuries to the occupants of the Henderson vehicle. At one point during the litigation, Hartford's counsel wrote to counsel for the Waltons and to counsel for the Hendersons: "It is our understanding that the Hendersons are financially desperate and even payment of this $100,000 cannot begin to compensate the Hendersons for their out-of-pocket expenses incurred as a result of this accident." R.Vol. 2, 44. Prior thereto, the insurer of the Eckmans had paid into court its liability policy limits of $100,000, leaving it to be determined who would receive it, the Hendersons, the Waltons, or both.

Not mentioned in the district court's otherwise well-narrated sequence of events is the reluctance of counsel for the Waltons to embroil them in a trial. Apparently anticipating that Hartford would recognize its liability and exposure under the underinsured motorist coverage of its policy, counsel retained by the Waltons entered into a written fee arrangement, contingent upon recovery, which provided for only 25 percent if counsel did not have to litigate, but 33⅓ percent if such became necessary.

As of July 23, 1987, settlement attempts initiated by the Waltons had fruitlessly come to an end, and, as the district judge wrote in his decision:

> Finally, the Waltons filed a third party action against The Hartford on July 23, 1987 alleging that:
>
>> Hartford is a named third party defendant herein because it has failed and refused to settle with the Waltons for their loss, although under the express terms of the policy it is obligated to do so.

After lengthy negotiation and discussion, all of the parties entered into a settlement agreement. With some exceptions not pertaining to this matter, the Hendersons were to receive the $100,000.00, which was the limit of Eckmans' liability insurance policy and which had been tendered to the Court in an interpleader action. The Waltons agreed to dismiss any and all claims against Eckmans and Hendersons, to make no claim to the interpleaded funds, and to waive any bad faith claim that they might have had against the Hartford. The Hartford agreed to waive its policy requirement that the Waltons exhaust the Eckman policy before proceeding with their underinsured claim against The Hartford. This Court approved the settlement and *dismissed all claims with the following exception* set forth in an Order filed October 27, 1988:

> It is specifically ordered that *the claims of ... [the] Waltons, against ... Hartford Insurance Company, shall not be dismissed* pending the conclusion of arbitration between the parties to which they have agreed and which is contemplated by the terms of the Stipulation and agreement of the parties. At such time as said arbitration has been consummated, then upon notice to this Court by those parties, that claim shall likewise be dismissed.

Arbitration is provided for in the underinsured motorist portion of the policy issued by Hartford covering the Waltons as follows:

### ARBITRATION

If we and a covered person do not agree:

1. Whether that person is legally entitled to recover damages under this endorsement; or

2. As to the amount of damages;

either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within thirty days, either may request that selection

be made by a judge of a court having jurisdiction. Each party will:

1. *Pay the expenses it incurs;* and

2. Bear the expenses of the third arbitrator equally.

Unless both parties agree otherwise, arbitration will take place in the county in which the covered person lives. Local rules of procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the covered person is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount specified does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrator's decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

R.Vol. 2, 65–67. The settlement did not materialize until more than two years after Jake Walton was killed and the Henderson children seriously injured.

## II–A. THE ATTORNEY FEE AWARD

▉ The district court's decision included its final conclusions as to attorney fees claimed by the Waltons and recapitulated the proceedings of arbitration:

On November 16, 1988, the arbitration proceeding was conducted in Coeur d'Alene, Idaho. The entire proceeding lasted just over two hours and was presided over by three arbitrators in Mr. Mitchell's [attorney for Mr. & Mrs. Walton] office. The arbitrators deliberated for approximately twenty to thirty minutes and issued an award of $1,000 to Mr. Walton concerning his claim for injuries, $15,000 to Mrs. Walton concerning her claim for injuries, and $150,000 to the Waltons for the wrongful death of Jake. Within 48 hours of the award, The Hartford's draft in the amount of $166,000.00 was tendered to Mr. and Mrs. Walton. Shortly thereafter, The Hartford was advised that Waltons' counsel intended to petition for his one-third contingent attorney's fees pursuant to Idaho Code Section 41–1839. Because The Hartford opposed the petition for attorney's fees and since, under the terms of the policy, trial de novo may be obtained within 60 days of the award, The Hartford withdrew the tender pending resolution of the issue.

The Waltons applied for an Order Confirming Arbitration Award. The Waltons also submitted a Motion for Attorney Fees. Hartford filed an Objection to Confirmation of Arbitration Award and opposed an award of attorney's fees. Both parties have submitted Memorandums on these issues and hearings were held on November 29, 1988 and December 29, 1988.

R.Vol. 2, 67–68 (emphasis added).

The district court ruled against Hartford's contention that a policy provision declaring that "[each] party will pay the expenses it incurs" applied to attorney fees. The court concluded that at best the language was ambiguous and interpreted it adversely to Hartford as the drafter of the contract. Thus, the court ruled that the Hartford policy did not preclude the Waltons from obtaining attorney fees.

The court set out the provisions of I.C. § 41–1839.[1] In addressing the application of the statute, the court stated that it was aware of this Court's recent decision in

---

1. As synopsized by the district court, those provisions are:

(1) Any insurer issuing any policy, certificate or contract of insurance ... which shall fail for a period of thirty (30) days after *proof of loss* has been furnished as provided in such policy, certificate or contract, to pay the person entitled thereto the amount *justly due* under such policy, certificate or contract, *shall in any action thereafter brought against the insurer in any court in the state for recovery under the terms of the policy,* certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.

R.Vol. 2, 71 (emphasis in original).

*Brinkman v. Aid Ins. Co.,* 115 Idaho 346, 766 P.2d 1227 (1988). The district court concluded therefrom, as to the requirement of proof of loss, that "insurance policies cannot require more proof than is necessary for a prima facie case." R.Vol. 2, 72. The court added that "[i]n the instant case, it is not clear that any proof of loss was required by the policy or by The Hartford." R.Vol. 2, 72. The court went on to observe that Hartford was notified of the claim by letter, and that the Waltons' offer to settle for $170,000 was sufficient proof of loss.

Relative to the claim for attorney fees by the Waltons, the district court wrote:

> This Court holds that, after an action has been brought against an insurer, attorney's fees are allowable under Idaho Code Section 41–1839.
>
> This result is consistent with the policy behind the statute. The Idaho Supreme Court has held that the statutory attorney's fee is not a penalty but is an additional sum rendered as compensation when the insured is entitled to recover under the insurance policy. The purpose of Idaho Code Section 41–1839 is to prevent the sum that is due the insured under the policy from being diminished by expenditures for the services of an attorney. *Halliday v. Farmers Insurance Exchange,* 89 Idaho 293, 404 P.2d 634 (1965). An insurer should not be permitted to circumvent the statute simply by demanding arbitration after a suit is filed.
>
> This result is also not an unfair one in that The Hartford still has the option of demanding its right to a trial as provided for in the insurance policy. According to the policy, either party may demand a trial within sixty days after the arbitrator's decision.

R.Vol. 2, 73–74. Thus, the district court upheld the continued vitality of *Halliday v. Farmers Ins. Exch.,* 89 Idaho 293, 404 P.2d 634 (1965). We affirm its reasoning in applying *Halliday* and in recognizing that either party within sixty days after arbitra-

tion was concluded could insist that damages be decided at trial in district court.

## II–B. THE AMOUNT OF FEES AWARDED

■ When the trial court ordered that the Waltons were entitled to attorney fees from their insurer, it deferred the setting of the fees until such time as the case was fully concluded, particularly having in mind the above-mentioned agreement which settled all aspects of the proceeding involving the Hendersons, the Waltons, the Eckmans, and Hartford (other than the Waltons' action against Hartford). The trial court observed that there would be an arbitration, as provided in the policy, but thereafter either party dissatisfied with the outcome had sixty days in which to request that the amount of damages be decided at trial in the district court. When the sixty days expired, the Waltons moved for confirmation of the arbitration award and for the attorney fees which they had incurred per their contract retaining counsel. Hartford opposed the motion, but did not reassert its previous objection and the court's written ruling which was in favor of the Waltons. As the court worded it, Hartford nevertheless "has continued to argue that attorney's fees should not be awarded to the Waltons. According to Hartford's argument, under the insurance policy, each party was to pay its own expenses." The district court stood firm on its previous ruling, but then discussed Hartford's contention that the fees should be determined by time expended at an hourly rate, relying upon and citing to *Nalen v. Jenkins (Nalen I), Nalen II,*[2] and to *Decker v. Homeguard Sys.,* 105 Idaho 158, 666 P.2d 1169 (Ct.App.1983). It observed from *Decker* that the prevailing plaintiffs were awarded fees in excess of what they would have paid under their contingent fee agreement, and quoted from *Decker,* 105 Idaho at 163, 666 P.2d at 1174:

> Under the rule the trial court is required ... to consider the existence and terms of the contingency arrangement. But

**2.** *Nalen v. Jenkins (Nalen I),* 113 Idaho 79, 741 P.2d 366 (Ct.App.1987); *Nalen v. Jenkins (Nalen*

*II),* 114 Idaho 973, 763 P.2d 1081 (Ct.App.1988).

the court is not required to give that factor any more weight than should be given to the other factors applicable to reaching the ultimate determination of ... the amount to be awarded.

R.Vol. 3, 23. From there the court turned to our then recent decision in *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 351, 766 P.2d 1227, 1232 (1988), and quoted from it:

An award at or near the standard contingent fee level is not necessarily inappropriate and the fact a fee is set at that level is not ipso facto proof of a manifest abuse of discretion.... An amount equal to standard contingent fees in the same locale is not an amount that is clearly erroneous. *The fact is the $52,-000 award was what Brinkman's attorney costs actually were. Those expenses were incurred solely because Aid improperly refused to pay the claim under the contract of insurance. The amount awarded simply makes the insured whole.*

R.Vol. 3, 25 (emphasis added). Counsel for the Waltons, acting at the court's direction, compiled his hours of time expended for the Waltons at his usual hourly fee of $150, which for 169 hours amounted to $26,350. The trial judge recognized this to be less than a one-third contingent fee, but declared it to be reasonable in a case which was deemed by the court to not contain extraordinarily difficult circumstances. In that manner the Waltons, who were contractually obliged to pay one-third of their recovery, were judicially restricted to gaining reimbursement from Hartford. The district court so held notwithstanding that it clearly recognized this Court's holding in *Halliday v. Farmers Ins. Exch.*, 89 Idaho 293, 404 P.2d 634, that the purpose of I.C. § 41–1839 is to prevent the sum that is due the insured under the policy from being diminished by expenditures for the services of an attorney.

In our view the district court did not give proper consideration to the contingent fee agreement, even though it recited the I.R.C.P. 54(e)(3) factors. It should be kept in mind that in representing the Waltons, their counsel initially tried to orchestrate a settlement without litigation or arbitration, and certainly without delay, in which event the costs of counsel to the Waltons would have been only 25 percent of the recovery. However, it is abundantly clear that Hartford may very well have procrastinated as long as possible in order to avoid paying under the underinsured provisions of its policy sold to the Waltons, who willingly had paid the premium with the reasonable expectation that the Hartford umbrella covered them up to the amount of $300,000. As it was, Hartford was quite willing to hold back from settling, and has cost the Waltons considerably more in attorney fees. Hartford's delay caused the ultimate result, not consistent with the statute, of substantially diminishing the Waltons' recovery. The district court, although well aware of *Brinkman*, considered it, but did not apply it in deciding the Waltons' claim for attorney fees.

## III. PREJUDGMENT INTEREST WAS CLEARLY IN ORDER

■ The denial of prejudgment interest by the district court was error.[3] As pointed out in the Waltons' brief, the circumstances are so similar to those in *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 353, 766 P.2d 1227, 1234 (1988), that the language in the latter, by changing names, Waltons for Brinkman, and Hartford for Aid, *Brinkman* would read:

[8] The final issue is whether ... Waltons were entitled to recover prejudgment (pre-award) interest upon the entire amount of the jury (arbitrators) award.

Idaho Code § 28–22–104 governs this issue:

28–22–104. Legal rate of interest.— (1) When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of twelve cents on the hundred by the

---

3. The district court did allow for some prejudgment interest. Citing *Reynolds v. American Hardware Mut. Ins. Co.*, 115 Idaho 362, 766 P.2d 1243 (1988), the court ruled that "prejudgment interest began to accrue when the arbitration decision was rendered and continues to accrue until a judgment is entered." R.Vol. 3, 34.

year on: (1) Money due by express contract.

Hartford and Waltons were parties to an express contract: the underinsured motorist policy. By the terms of this contract, Hartford was obligated to compensate Waltons for injuries sustained at the hands of an underinsured motorist. When the underinsured driver swerved across the center lane and hit Waltons head-on, Hartford's duty to pay accrued. Had Hartford required a proof of loss, Hartford's duty to pay would have come due when Waltons submitted their proof of loss statement in the form of the settlement brochure. In any event, Hartford's duty to pay pursuant to the insurance contract came due prior to trial.

It is significant that Hartford's duty arose out of a contract between Hartford and Waltons, not out of a tort action. Because Hartford contracted to insure Waltons for up to $300,000 for all injuries and losses suffered at the hands of an underinsured tort-feasor, Hartford is liable for prejudgment (pre-award) interest on the entire amount awarded by the arbitrators. Prejudgment (pre-award) interest accrues on the general damages from the date of the accident, because that is the date Hartford's contractual duties accrued....

Waltons' Brief, 13–14.

As was stated in *Emery v. United Pacific Ins. Co.*, 120 Idaho 244, 815 P.2d 442 (1991):

In awarding prejudgment interest, the trial court relied on our recent holding in *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 766 P.2d 1227 (1988). In *Brinkman*, the insured was similarly injured by an underinsured motorist. The insurer, Aid Insurance Company, refused to pay Brinkman, causing him to file suit to recover under the underinsured motorist clause of his insurance policy. A jury returned a verdict awarding Brinkman $156,000 in damages. The trial court in *Brinkman* looked to I.C. § 28–22–104(1) which provides for prejudgment interest on "money due by express contract" and found that Brinkman was entitled to pre-

judgment interest from the date of the accident on the medical bills which became due and owing prior to suit and which were not timely paid by Aid. Brinkman appealed asserting that prejudgment interest should have been allowed upon the entire amount of the jury award including the general damages. Pursuant to I.C. § 28–22–104(1), this Court held in favor of Brinkman stating,

It is significant that Aid's duty arose out of a contract between Aid and Brinkman, not out of a tort action. Because Aid contracted to insure Brinkman for up to $300,000 for all injuries and losses suffered at the hands of an underinsured tortfeasor, Aid is liable for prejudgment interest on the entire amount awarded by the jury. Prejudgment interest accrues on the general damages from the date of the accident, because that is the date Aid's contractual duties accrued.

115 Idaho at 353–54, 766 P.2d at 1234–35. *Emery*, 120 Idaho at 247, 815 P.2d at 445. We observe that the facts and circumstances of the instant case are virtually indistinguishable from those in *Brinkman*. Accordingly, we are brought to the conclusion that the district court erred in not awarding prejudgment interest. We also conclude that in underinsured motorist coverage the interest begins to accrue on the date of the accident.

We affirm the district court's decision to award attorney fees and remand this cause to the district court for reconsideration as to the amount thereof in accordance with the views herein expressed. We also direct the district court to compute the amount of recoverable prejudgment interest. In both instances the court will enter an appropriate final judgment. Costs on both appeals are awarded to the Waltons, not inclusive of attorney fees.

BOYLE and McDEVITT, JJ., concur.

JOHNSON, Justice, concurring and dissenting.

I concur in the Court's opinion, except part II–B (The Amount of Fees Awarded), from which I dissent.

In *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 766 P.2d 1227 (1988), the Court held that the trial court did not abuse its discretion in awarding the insured an attorney fee that was roughly equal to the fee charged in a contingent fee contract between the insured and his attorneys. 115 Idaho at 350–51, 766 P.2d at 1231–32. Here, the Court turns *Brinkman* on its head and, in effect, holds that the trial court abused its discretion by not awarding the insured an attorney fee equal to a contingent fee.

In my view, the trial court considered the factors enumerated in I.R.C.P. 54(e)(3) and did not abuse its discretion in awarding an attorney fee that was less than a one-third contingent fee.

BAKES, C.J., concurs.

BAKES, Chief Justice, dissenting:

I dissent for the reasons set forth in my dissenting opinion in *Emery v. United Pacific Ins. Co.*, 120 Idaho 244, 815 P.2d 442 (1991).