898 P.2d 53

Harold YOUNG and Hazel Young, husband and wife, Plaintiffs–Respondents–Cross Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant–Cross Respondent.

No. 21792.

Supreme Court of Idaho,
Boise, March 1995 Term.

June 22, 1995.

---

Elam & Burke, P.A., Boise, and Reed McClure, Seattle, Washington, for appellant. William R. Hickman, argued.

Park & Burkett, Boise, for respondents. W. Anthony Park, argued.

JOHNSON, Justice.

This is an automobile insurance case. We conclude that there is no basis to overturn the jury's verdict finding that the insurance company is liable to its insureds for underinsured motorist coverage under the theory of estoppel. We also conclude that the trial court did not abuse its discretion in awarding only part of the contingent fee the insureds agreed to pay their attorney.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS.

In 1986, Harold and Hazel Young wanted to purchase automobile insurance with a yearly premium plan. The Youngs wanted to do this because they spent the winters in Arizona, and their daughter took care of their bills while they were gone. Because the insurance company that insured their vehicles (the existing insurer) could not provide this type of premium plan, the Youngs decided to transfer the insurance on one of their three vehicles to another company.

Harold Young visited a State Farm Mutual Automobile Insurance Company (State Farm) office where an employee (the agent) informed Harold that State Farm offered yearly premium plans. The agent persuaded Harold to transfer the insurance on all three of the Youngs' vehicles to State Farm.

At trial, Harold testified that after the initial discussion with the agent, he went home and obtained a document from his insurance file showing the coverage provided by the existing insurer for the Youngs' three vehicles. He said he delivered this document, including the following item, to the agent:

UNINSURED AND UNDERINSURED MOTORISTS:
BODILY INJURY  $50,000  $100,000  $ 9.50
EA PERSON  EA ACCIDENT

---

Harold also testified that he wanted State Farm to provide the same "full coverage" he had with the existing insurer, but increased to double the amount. He said that when he delivered the insurance document to the agent, he told the agent he "wanted everything doubled." According to Harold, the agent indicated State Farm would double the coverage, although Harold acknowledged that there was no specific reference to underinsured motorist coverage. Harold told the agent that he and his wife would be leaving for Arizona soon, and that anything State Farm mailed to the Youngs would be forwarded to their daughter.

Although the agent had no specific recollection of her meeting with Harold, she testified that it was her custom to discuss and explain all the various types of coverage with all applicants. The agent stated that she would not have relied on information from a previous policy because it might have tied her to a prior agent's mistake.

After Harold delivered the document describing the coverage provided by the existing insurer, the agent drew up policy applications for the Youngs' vehicles. The section listing coverages begins:

THE INSURANCE APPLIED FOR IS ONLY FOR THE COVERAGES INDICATED BY SPECIFIC PREMIUM ENTRY. IF PREMIUM CANNOT BE ENTERED, CHECK BOXES TO INDICATE COVERAGE REQUESTED. THE PREMIUM SHOWN BELOW MUST BE IN COMPLIANCE WITH THE COMPANY'S RULES AND RATES AND IS SUBJECT TO REVISION.

The application included among the coverages listed "UNINSURED MOTOR VEH.," with the designation "U," and "UNDERINS. MOTOR VEH.," with the designation "W." The applications have a premium, $6.60, entered on the line for uninsured motorist coverage, as well as a check in the box under "U." There is neither a premium on the line for underinsured motorist coverage, nor a check in the box under "W."

A few days after his initial meeting with the agent, Harold returned to the State Farm office to sign the policy applications. Harold testified that he did not read the applications before signing them, and that he relied on the agent to provide the coverage he requested.

The Youngs received a "Declarations Page" for each policy. These declarations pages indicated that the coverages included "U," but there was no listing of "W." State Farm insured the Youngs' vehicles for the next three years. The premium notices included this listing among the coverages and limits:

U   UNINSURED MOTOR VEHICLE
    BODILY INJURY
    100,000/300,000                     $6.60

The premium notices did not include any listing of "W" or underinsured motorist coverage.

Harold testified that he did not read the contents of the documents he received from State Farm because he had always relied on his existing insurer to continue the coverage he had before. He stated that he believed State Farm would do the same.

In April 1989, Harold went to State Farm's office to renew a lapsed policy for a vehicle that is not involved in this case. At the request of the person who prepared the application, Harold initialed the coverages he was declining, including "UNDERINS. MOTOR VEH.," "W," coverage.

Three months later, the Youngs were in a serious accident with an underinsured motorist while driving one of their vehicles insured by State Farm. State Farm denied the Youngs' underinsured motorist claim. The Youngs sued State Farm for underinsured motorist benefits, basing their claim on theories of estoppel, breach of oral contract, and negligence. Following a trial, the jury returned a verdict for the Youngs based on both estoppel and breach of contract, but did not reach the question of negligence. The trial court denied State Farm's motions for directed verdict, judgment notwithstanding the verdict, and new trial. Pursuant to I.C. § 41–1839, the trial court awarded the Youngs attorney fees representing one-half of the contingent fee they had agreed to pay their attorney. State Farm appealed. The Youngs cross-appealed, contending that the trial court should have awarded them the full amount of the contingent attorney fee.

This Court assigned the case to the Court of Appeals, which reversed the trial court's denial of State Farm's motion for a judgment notwithstanding the verdict. This Court granted the Youngs' petition for review.

## II.

### THE PAROL EVIDENCE RULE DOES NOT APPLY TO THE ESTOPPEL CLAIM.

■ State Farm asserts that the parol evidence rule prevents consideration of the conversation between Harold and the agent in connection with the Youngs' estoppel claim. We disagree.

In *Lewis v. Continental Life & Accident Co.*, 93 Idaho 348, 461 P.2d 243 (1969), the Court said:

> The [insurance company] argues that, regardless of what arrangements may have been worked out between the county and itself prior to its issuing the group policy, the "plain words" of the printed form master policy must control. It is argued that we must hold that once this written policy was issued, it, according to the traditional precepts of the parol evidence rule, represented the entire, "integrated" contract between the two parties. With these contentions we cannot agree.

*Id.* at 350, 461 P.2d at 245.

This continues to be the law in this state. As the Court stated in *Lewis:*

> The purpose of the doctrine of estoppel in insurance cases is to enforce the contract as originally agreed upon the parties. We are not writing a new contract. We are only refusing to allow the insurance company to replace the original bilateral agreement with its own unilaterally drafted insurance form.

*Id.* at 353, 461 P.2d at 248 (footnote omitted).

## III.

### THERE WAS SUBSTANTIAL EVIDENCE TO SUPPORT THE JURY'S FINDING OF ESTOPPEL.

■ State Farm asserts that the trial court should have granted its motion for judgment notwithstanding the verdict be-

cause there was no substantial evidence to support a finding of estoppel. We disagree.

In *Lewis* the Court stated:

This Court, recognizing the character of the written insurance "contract," has long held, where a policy holder is induced to enter into contract in reasonable reliance on promises of or agreements with the soliciting representative of that insurance company thereby leaving the insured person or property otherwise unprotected, and the company profits from that change of position, that the insurance company is estopped to deny the liability for which it actually contracted by raising provisions from its own printed policy form.

93 Idaho at 351, 461 P.2d at 246 (footnote omitted). In the present case, the trial court instructed the jury in substantially this manner.

■ State Farm contends that as a matter of law the Youngs did not satisfy the requirement that the reliance on the oral promises or agreements be reasonable. State Farm argues that the Youngs' reliance on Harold's conversation with the agent was unreasonable as a matter of law in the face of three years of written documentation showing that the Youngs did not have underinsured motorist coverage.

■ In *Foster v. Johnstone*, 107 Idaho 61, 685 P.2d 802 (1984), the Court emphasized that for estoppel to apply an insured's reliance on an agent's oral representations must be reasonable under all the circumstances. The reasonableness of the insured's reliance presents a question of fact for the jury. *Id.* at 68, 685 P.2d at 809.

In *Foster* the Court focused on the inadequacy of the trial court's instructions on this issue, noting that "where facts exist which tend to indicate the insureds should have been aware that the policy excluded coverage contrary to the representations of the agent, the trier of fact should consider those facts as bearing on the issue of reasonableness." *Id.* at 67, 685 P.2d at 808. The Court then listed several factors the jury should have had the opportunity to consider:

(1) the length of time between the receipt of the policy and the accident;

(2) the opportunities to verify the coverage under the policy; and

(3) the type of policy involved and the likelihood of the coverage existing in light of industry norms and common experience.

*Id.*

In the present case, the trial court instructed the jury that it should consider the circumstances listed in *Foster* in determining whether the Youngs knew or reasonably should have known that State Farm's policy did not provide underinsured motorist coverage.

In reviewing the denial of the motion for judgment notwithstanding the verdict, "we review the record and draw all inferences in favor of the non-moving party to determine if there is substantial evidence to support the verdict." *Hoglan v. First Sec. Bank of Idaho, N.A.*, 120 Idaho 682, 684, 819 P.2d 100, 102 (1991). The standard we apply to make this determination is whether we can say " 'that there can be but one conclusion as to the verdict that reasonable minds could have reached.' " *Id.* at 685, 819 P.2d at 103 (quoting *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986)).

The Youngs presented substantial evidence through Harold's testimony of their initial reasonable reliance on the agent's representation. Having done so, they were not foreclosed as a matter of law from continuing their reliance because of the subsequent written documents. The Court inherently rejected this approach in *Foster* when it said, "[w]hile some jurisdictions have held that an insurer can only be estopped from denying coverage where the insured has not received a copy of the policy before the loss occurs, that is not the law in Idaho." 107 Idaho at 67, 685 P.2d at 808 (citation omitted). The clear implication of this statement is that the receipt of a copy of the policy or other written documents may be considered by the jury on the issue of reasonable reliance, but it does not foreclose as a matter of law the jury's consideration of estoppel. The reasonableness of the insured's reliance remains a question of fact for the jury to resolve.

The trial court instructed the jury that one of the circumstances the jury should consider

in determining the reasonableness of the Youngs' reliance was "the opportunity and general obligation one has to read contracts to which he or she is a party." It was for the jury to weigh the circumstances, including this one, in determining the reasonableness of the Youngs' continued reliance on the agent's representation.

We decline State Farm's invitation to address whether the burden of proof for estoppel in insurance cases should be clear and convincing evidence. This issue was not raised before the trial court. Also, we see no issues of public policy that dictate a reformulation of estoppel as it applies to insurance cases, as State Farm suggests.

## IV.

### THE TRIAL COURT CORRECTLY INSTRUCTED THE JURY.

State Farm asserts that the trial court incorrectly instructed the jury in several respects. We disagree.

■ One instruction informed the jury that in determining the reasonableness of the Youngs' reliance, the jury should consider "the opportunity and general obligation one has to read contracts...." State Farm contends this language is not as strong as the language from *Foster* which they offered: "It is certainly not the law in Idaho that an insured has no obligation to read his policy...." We do not consider the difference between these two statements to be consequential. State Farm also contends this instruction is too weak and general compared to *Foster*'s language, which referred to the insured's "opportunities to verify the coverage under the policy." Again, we do not consider the difference between the two statements to be consequential.

■ State Farm also contends that this instruction should have contained its requested language from *Foster* indicating that an insured may not rely on subjective impressions gleaned from a conversation with an agent prior to signing an insurance contract. The trial court's instructions do not indicate that the jury was allowed to consider subjective impressions in determining whether the Youngs reasonably relied on the agent's representation. The jury was instructed prop-

erly on the process it should follow in determining if State Farm was estopped to deny that the Youngs had underinsured motorist coverage. We are entitled to presume the jury followed these instructions.

■ State Farm challenges the trial court's denial of its requested instruction stating that a party who signs a contract may not later claim that the party did not read or understand it. The implication of this requested instruction is contrary to the doctrine of estoppel this Court has applied in insurance cases, and the trial court correctly rejected it.

■ One of the trial court's jury instructions states that the purpose of estoppel is to enforce the contract originally agreed upon, not to write a new one. It continues with this language from *Lewis:* "The doctrine simply refuses to allow an insurance company to replace an original bilateral agreement with its own unilaterally drafted insurance form." State Farm contends that the term "original bilateral agreement" misled the jury into thinking that the trial court was instructing the jury that there was an oral agreement. In the context of all the instructions concerning estoppel, this instruction did not direct the jury to find that there was an oral agreement, but merely advised the jury what the result would be if they found that the Youngs reasonably relied on the agent's representation.

■ State Farm challenges the following portion of the trial court's jury instruction reciting the elements for the formation of a contract: "In this case the contract is not required to be in writing." State Farm contends this unduly emphasized the Youngs' view of the evidence and amounted to a comment on the evidence. We conclude that this portion of the instruction merely stated the law on the subject.

## V.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN AWARDING ATTORNEY FEES THAT WERE LESS THAN THE CONTINGENT FEE AGREEMENT.

■ The Youngs assert that the trial court should have awarded them attorney

fees equal to the contingent fee they agreed to pay their attorney. We disagree.

In *Walton v. Hartford Ins. Co.*, 120 Idaho 616, 818 P.2d 320 (1991), the Court remanded the case with directions for the trial court to give "proper consideration" to the contingent fee agreement. *Id.* at 621–22, 818 P.2d at 325–26. *Walton* does not require a trial court to award the full amount of a contingent fee, however. *Id.* at 620–21, 818 P.2d at 324–25. The trial court has discretion, after considering the factors contained in I.R.C.P. 54(e)(3), to determine the amount of attorney fees that should be awarded pursuant to I.C. § 41–1839. *See Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 350–51, 766 P.2d 1227, 1231–32 (1988). In the present case, the trial court (1) correctly perceived the issue as one of discretion, (2) acted within the outer boundaries of its discretion and consistent with the caselaw and I.R.C.P. 54(e)(3), and (3) reached its decision by an exercise of reason. *Sun Valley Shopping Ctr. v. Idaho Power*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

## VI.

## CONCLUSION.

Because we uphold the jury's verdict based on the theory of estoppel, we do not address other issues concerning the breach of oral contract theory.

We affirm the judgment and the award of attorney fees.

We award the Youngs costs on appeal. We also award the Youngs attorney fees on appeal pursuant to I.C. § 41–1839.

TROUT, SILAK and SCHROEDER, and YOUNG, J. Pro Tem., concur.