Alfred J. BIANCO, As Plan Administrator to the Estate of Gaston & Snow, Plaintiff,

v.

Robert A. ERKINS and Bernardine Erkins, Defendants.

No. 99 Civ. 9343(JSR).

United States District Court, S.D. New York.

Sept. 20, 2002.

**350**

Neal H. Klausner, New York City, for plaintiff.

James A. Moss, New York City, for defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

If a law firm sues a former client for attorney's fees and wins, can it also recover the attorney's fees it incurred in the collection suit? In this case, the answer is yes.

Here, plaintiff Alfred J. Bianco, as plan administration for the now-defunct law firm of Gaston & Snow, seeks to recover the attorney's fees and costs he incurred in successfully suing the defendants for overdue attorney's fees they owed Gaston & Snow for its successful representation of defendants in a protracted litigation in Idaho. Following a trial, a jury in this District, on March 20, 2000, awarded plaintiff $1,800,841.41 in damages, and on April 5, 2000, the Court additionally awarded plaintiff $2,114,364.94 in prejudgment interest. The judgment in plaintiff's favor was affirmed in all respects by the Court of Appeals. *Bianco v. Erkins* (*In re Gaston & Snow*), 243 F.3d 599 (2d Cir.2001). Plaintiff thereupon renewed a prior, timely motion for attorney's fees, on which the Court had deferred action while the appeal was pending.

■ At the outset, the Court must decide which choice of law principles govern the determination of which substantive law to apply to the instant motion. Where, as here, a bankruptcy proceeding is transferred to a federal district court for trial, the choice of law principles of the state in which the district court sits control unless the case implicates a significant federal bankruptcy policy, in which event federal choice of law rules apply. *Bianco*, 243 F.3d at 605–07. The Court of Appeals has previously determined that New York's

choice of law principles apply to this case, *id.*, and neither side argues that there are any factors special to the instant motion that alter that determination.

The underlying cause of action on which plaintiff here recovered was breach of contract, and "in a contract case, New York courts will normally apply the law of the jurisdiction having the greatest interest in the litigation," *Bianco*, 243 F.3d at 607–08, citing *Matter of Allstate Ins. Co.*, 81 N.Y.2d 219, 225–28, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993). As the Court of Appeals further noted, the underlying facts here, involving collection of attorney's fees for representing Idaho residents in an Idaho lawsuit against an Idaho bank, "suggest that Idaho law ... would govern." *Id.* at 608, 597 N.Y.S.2d 904, 613 N.E.2d 936. While New York law mandates an exception pertinent to the statute of limitations here applicable, *id.* at 608–09, 597 N.Y.S.2d 904, 613 N.E.2d 936, no similar exception pertains to recovery of attorney's fees in the instant litigation. Indeed, the parties here previously stipulated that Idaho law applies to the somewhat analogous determination of the pre-judgment interest rate, *see* Defendants' letter in response to the Proposed Judgment submitted by Neal Klausner dated March 31, 2000, at 1–2; Plaintiff's letter in response to defendant's March 31, 2000 letter dated April 5, 2000, at 1, as well as to the case generally, *see Bianco*, 243 F.3d at 609 n. 8. Accordingly, the Court finds that Idaho substantive law governs the instant motion. *See Katz v. Berisford Inter'l PLC*, 2000 WL 959721, at *7–9 (S.D.N.Y., July 10, 2000); *Csaky v. Meyer*, 1995 WL 494574, at *1–2 (S.D.N.Y. Aug. 18, 1995).[1]

Section 12–120 of the Idaho Code provides that "[i]n any civil action to recover on [a] ... contract relating to the purchase or sale of ... services ..., the prevailing party shall be allowed a reasonable attorney's fee to be set by the court ...." The amount of those fees is determined by reference to Rule 54(e)(3) of the Idaho Rules of Civil Procedure, which directs a court to consider the following factors:

A. The time and labor required.

B. The novelty and difficulty of the questions.

C. The skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law.

D. The prevailing charges for the work.

E. Whether the fee is fixed or contingent.

F. The time limitations imposed by the client or the circumstances of the case.

G. The amount involved and the results obtained.

H. The undesirability of the case.

I. The nature and length of the professional relationship with the client.

J. Awards in similar cases.

K. The reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case.

L. Any other factor which the court deems appropriate in the particular case.

The Court has considered each and all of these factors with respect to each of plain-

---

**1.** Defendant's reliance on *Bensen v. American Ultramar Ltd.*, 1997 WL 317343 at *7 (S.D.N.Y. June 12, 1997) is misplaced, because *inter alia*, the *Bensen* court expressly distinguished the choice of law analysis it applied in denying attorney's fees to a party who prevailed on a statutory counterclaim under the English Companies Act from the analysis applied in more usual cases, such as this one, *id.* at *10.

tiff's requests for attorney's fees but notes below only those factors that bear further elaboration in the Court's resolution of each of plaintiff's requests, as follows:

■ *First*, plaintiff requests $51,348 in attorney's fees for services provided by the law firm Paul, Weiss, Rifkind, Wharton, & Garrison ["Paul Weiss"], consisting of work done by partner Robert Smith, Esq., billed at $535/hour in 1999 and $595/hour in 2000. *See* Declaration of Neil H. Klausner dated August 10, 2001 ("Klausner Decl."), Ex. K. Defendants do not dispute Mr. Smith's time, but contend that his hourly rate exceeds permissible limits. *See Lowrance v. Coughlin*, 1995 WL 103277 (S.D.N.Y. Mar. 8, 1995). The Court finds no such limit in the precedent cited by defendants. Mr. Smith's considerable hourly rate is commensurate with his equally considerable skill and experience, *see* Idaho R. Civ. P. 54(e)(3)(C), customary for litigation partners at his level in New York, *id.* at (D), and consistent with the normal hourly billing rate that he charges his other clients, *see* Klausner Decl., Ex. K at ¶ 5. Accordingly plaintiff is entitled to recover the full amount of Paul Weiss' fees of $51,348.

■ *Second*, plaintiff requests $81,558.80 in attorney's fees for services performed by The McCabe Group, a law firm led by Edwin A. McCabe, Esq., who, while a partner at Gaston & Snow, was the chief trial attorney for defendants in the underlying Idaho action that gave rise to the instant case. *See* Declaration of Edwin A. McCabe dated July 23, 2001, at ¶ 5. Specifically, at plaintiff's request, Mr. McCabe and several associated lawyers and paralegals performed over 300 hours of pre-trial legal work in preparation for this lawsuit. In addition, McCabe entered into an arrangement giving him a contingency interest in any damages obtained by plaintiff.

Defendants argue that it was ethically improper for McCabe and his group to undertake this work because it was obvious that he would be a key witness at the trial of this case, as indeed he was. Since the ethical rules regarding a lawyer who is likely to appear as a witness are directed, at least in material part, at safeguarding the litigation process, whether there is an ethical impropriety in undertaking pre-trial work in these circumstances is governed, not by Idaho law, but by the ethical rules of practice before the Bankruptcy Court of the Southern District of New York (where the action commenced) and the District Court of the Southern District of New York (where it was actually tried). In this District, the Bankruptcy Court has no separate ethical rules but simply requires that lawyers who appear before it be in good standing with the District Court. The District Court, in turn, largely (though not exclusively) applies the ethical rules of New York State, as embodied in the New York State Lawyer's Code of Professional Responsibility. *See* Rule 1.5 of the Local Civil Rules, S.D.N.Y.

Disciplinary Rule 5–102(A) of the New York Code of Professional Responsibility provides that "[a] lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an *advocate* on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to called as a witness on a significant issue *on behalf of the client* ..." (emphases supplied).[2] By contrast, Disciplinary Rule 5–102(B) provides that "[n]either a lawyer nor the lawyer's firm shall

---

2. Similarly, Rule 3.7 of the Model Rules of Professional Responsibility provides that "[a] lawyer shall not act as advocate *at a trial* in which the lawyer is likely to be a necessary witness ..." (emphasis added).

accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer ... may be called as a witness on a significant issue *other than on behalf of the client ...*" (emphasis supplied). Reading these together, it appears that there was no prohibition on McCabe's accepting employment by plaintiff (the client) for strictly pre-trial work. *See generally,* Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering* § 33.5. This is not to say that Mr. McCabe's decision not only to accept pre-trial employment but also to purchase an interest in the litigation in which he must have known it was inevitable he would be called as a witness was necessarily consistent with the highest ideals of the profession. But the Court cannot say the circumstances justify denying plaintiff's recovery of the fees it paid McCabe for his work in this case, *i.e.,* $81,558.80.[3]

◼ *Third,* plaintiff requests attorney's fees of $831,037.63 for legal services rendered pursuant to several fee agreements between plaintiff and the law firm of Davis & Gilbert, primary counsel to plaintiff during the trial and appellate phases of this litigation. The agreement covering the trial work, a contingency fee agreement, gives Davis & Gilbert 25% of the first $1,200,000 of any damage award or settlement and 10% of any damage award or settlement above $1,200,000.[4] The agreement governing the firm's direct appellate work provides that Davis & Gilbert will be paid 200% of their actual time charges. Finally, an agreement covering preparation of plaintiff's reply brief to defendants' petition for a writ of certiorari calls for

Davis & Gilbert to be paid 200% of their actual time charges, but with a cap of $35,000. Based on these agreements, plaintiff seeks $546,520.63 in trial fees, $249,237.00 in appellate fees, and $35,000.00 in fees pertaining to the petition for certiorari.

◼ Idaho law permits trial courts significant discretion in awarding reasonable fees pursuant to the factors outlined in Idaho R. Civ. P. 54(e), *see Young v. State Farm Mut. Automobile Ins. Co.,* 128, 127 Idaho 122, 898 P.2d 53, 59 (1995), but no single factor is binding and courts may award fees above or below a party's formal fee agreement. *Sanders v. Lankford,* 326, 134 Idaho 322, 1 P.3d 823, 827 (App.2000). With respect to the trial fees, defendants contend that Davis & Gilbert's standard hourly rates are a fairer measure of reasonable fees under Rule 54(e)(3) than a contingency, since the case was a straightforward breach of contract case lacking any of the factors that make a contingency appropriate in, say, a personal injury setting. Plaintiff, of course, was free within limits to enter into any arrangement he wished with Davis & Gilbert; but defendants should not be bound by it by way of reimbursement, if application of the factors in Rule 54(e)(3) persuades otherwise. *Compare Young v. State Farm Mut. Auto. Ins. Co.,* 127 Idaho 122, 898 P.2d 53, 59 (1995) (awarding attorney's fees below contingent fee agreement), *with Brinkman v. Aid Ins. Co.,* 115 Idaho 346, 766 P.2d 1227, 1232 (1988) (upholding attorney's fees based on continent fee agreement). Here, the Court finds that Davis & Gilbert's standard hourly rates represent a fairer measure of "reasonable fees" under Idaho law and are more consistent with the pre-

---

3. The Court has considered defendants' other arguments in opposition to the award of the McCabe fees and finds them unavailing.

4. As part of this agreement, Davis and Gilbert agreed to contribute $25,000 toward the fees due Paul Weiss, and the figures herein reflect corresponding adjustments. *See* Klausner Decl., Ex. B.

vailing charges for such work, *see* Idaho R. Civ. P. 54(e)(3)(D).

On this basis, the Court awards plaintiff $200,464.25 in fees for David & Gilbert's trial work.[5] For similar reasons, defendants should not be bound by plaintiff's agreement to pay Davis & Gilbert a substantial premium for its appellate and certiorari work, but more reasonably should only be required to pay for actual time billed on these matters, subject, moreover, in the case of the certiorari work to the $35,000 cap, which likewise represents a more reasonable assessment of the work actually involved. Accordingly, the Court awards plaintiff $124,618.50 for Gilbert & Davis's client appellate work, and $35,000 for its certiorari work, *see* Klausner Decl., Ex. I; Supplemental Declaration of Neil H. Klausner dated Feb. 14, 2002, Exs. A and B.

Finally, in addition to attorney's fees, plaintiff seeks $8,386.40 in costs pursuant to Fed.R.Civ.P. 54(d)(1) and S.D.N.Y. Local Rule 54.1(c).[6] Local Rule 54.1(c)(2) provides that the following costs may be taxed: (1) the original transcript obtained for actual use in court or on appeal, (2) original deposition transcripts if the transcript was actually used or received in evidence at trial, (3) witness fees, mileage, and sustenance, (4) interpreting costs, (5) exemplifications and copies of exhibits (as to copies actually introduced at trial), (6) maps, charts, models, photographs, and summaries, (7) fees for masters, receivers, commissioners, court-appointed experts, (8) costs for title searches, and (9) docketing and serving fees. Here, plaintiff seeks $5,846.50 in trial transcripts costs, $2,500 in photocopying costs, and a $40 subpoena charge. Defendants challenge all but the $40 subpoena charge.

With respect to the transcript costs, the Court, after careful review, finds that only one of the claimed transcripts, with costs totaling $1,666.05, was reasonably obtained for actual use at the trial or on appeal. *See* Klausner Decl., Ex. J. As for copying costs, the Court finds that only $500 of these costs were trial-related. *See U.S. for Use & Benefit of Evergreen Pipeline Constr. Co. v. Merritt Meridian Corp.*, 95 F.3d 153, 173 (2d Cir.1996). Accordingly, the taxed costs are $2206.05.

Summarizing the above conclusions, the Court hereby awards plaintiff the following attorney's fees and costs:

| | |
|---|---|
| (1) Paul, Weiss fees | $ 51,348.00 |
| (2) McCabe Group fees | $ 81,558.80 |
| (3) Davis & Gilbert—Trial fees | $200,986.88 |
| (4) Taxed Costs | $ 2,206.05 |
| (5) Davis & Gilbert—Appeal fees | $124,618.50 |
| (6) Davis & Gilbert—Certiorari fees | $ 35,000.00 |

Post-judgment interest, at the rate provided by federal law, will run on the first four items from April 7, 2000 (the date judgment was entered). Post-judgment interest on the fifth item will run from March 19, 2001 (the date of the Court of Appeal's affirmance). Post-judgment interest on the sixth item will run from November 26, 2001 (the date certiorari was denied).

SO ORDERED.

---

5. This also includes $2,027.63 in LEXIS/NEXIS computer research expenses that the Court finds were reasonably necessary, *see* Idaho R. Civ. P. 54(e)(3)(K), as well as the claimed charges for paralegal fees, *see* Idaho R. Civ. P. 54(e)(i), and for the allegedly insufficiently particularized time of Davis & Gilbert attorney Gary Cohen. *See* Klausner Decl., Ex. H.

6. Plaintiff originally asked for $23,247.65 in costs but revised this number after receiving opposition papers from defendants.