130 P.3d 1127

**Wyatt P. GREENOUGH, Jr., an individual and as Personal Representative of the Estate of Wyatt D. Greenough, Sr., deceased, Plaintiff–Respondent,**

v.

**FARM BUREAU MUTUAL INSURANCE COMPANY OF IDAHO, an Idaho corporation, Defendant–Appellant.**

No. 31234.

Supreme Court of Idaho,
Boise, December 2005 Term.

Feb. 27, 2006.

Hall Farley Oberrecht & Blanton, P.A., Boise, for appellant. Kevin J. Scanlan argued.

Brady Law Chartered, Boise, for respondent. Michael G. Brady argued.

JONES, Justice.

Wyatt Greenough, Jr. brought this action seeking prejudgment interest under an underinsured motorist policy. The district court ruled in favor of Greenough Jr., awarding interest from the date of an automobile accident. We vacate and remand for further proceedings consistent with this opinion.

## I.

On June 30, 2002 Wyatt Greenough, Sr. (Mr. Greenough) was thrown from a vehicle and killed when the vehicle he occupied was involved in a single-car rollover accident. At the time, he had insurance through Farm Bureau which included coverage of up to $75,000 for losses sustained from an uninsured or underinsured motorist. This coverage applied so long as Mr. Greenough was not the driver.

After the accident, Lance Hotchkiss, the owner of the vehicle, told the police that he had picked up a hitchhiker and the hitchhiker was driving because he and Mr. Greenough were inebriated. Hotchkiss also informed the officer that the hitchhiker fled the scene immediately after the crash. The officer found no footprints to corroborate Hotchkiss' story. Instead, the officer noticed that the soles of Mr. Greenough's boots had impressions that may have matched the brake and clutch pads of the vehicle. In his report, the officer wrote that he believed Mr. Greenough may have been the driver. The Idaho State Lab conducted forensic testing of the soles of Mr. Greenough's boots and the brake and clutch pads. The criminologist determined that the impressions on the soles matched the pads and that Mr. Greenough may have been the driver.

On June 6, 2003 Greenough Jr. sent Farm Bureau a letter demanding $50,000 ($75,000 minus the $25,000 recoverable under Hotchkiss' insurance policy) of the underinsured coverage. The letter stated that on the night of the accident Hotchkiss told a witness and Greenough Jr.'s mother that he (Hotchkiss) was driving the vehicle. Further, the letter explained that Dave Beaufort, an accident reconstructionist, conducted an investigation and would testify that the officer was mistaken in his belief that Mr. Greenough was driving. Included with this letter were copies of the officer's accident report, doctors' bills, and an offer from Hotchkiss' insurance company to pay its $25,000 policy limit to Greenough Jr.

Farm Bureau responded to this letter by requesting that Greenough Jr. complete a proof-of-loss form and provide any documentation to support his underinsured motorist claim. Greenough Jr. then sent Farm Bureau a letter, which was identical to the June 6 letter, along with a copy of the documents already submitted. On September 10, 2003, Greenough Jr. sent Farm Bureau affidavits from Carrie Robertson, Greenough Jr.'s mother, and Rod Rodriguez, a witness to the accident, as well as a report from Mr. Beaufort. According to the affidavits, Hotchkiss admitted to Mr. Rodriguez immediately after the accident that he was driving the vehicle when it crashed and he admitted the same to Ms. Robertson later that evening at the hospital. Mr. Beaufort's report explained that the officer and criminologist were incorrect in their conclusions because, based upon their placement in Hotchkiss' vehicle, the brake and clutch pads could not have made the impressions that were found on the soles of Mr. Greenough's boots.

On September 22, 2003, Farm Bureau sent a letter confirming it had received and reviewed all of the documents Greenough Jr. had provided; however, its policy required Greenough Jr. to complete the proof-of-loss form before it could make a decision regarding the claim. On November 17, 2003, Greenough Jr. mailed a completed proof-of-loss form with additional copies of the previously provided documents.

At Farm Bureau's request, arbitration was scheduled for January 27, 2004 on the limited issue of whether Mr. Greenough was the driver. On December 29, 2003, Greenough Jr. filed a complaint against Farm Bureau

alleging breach of contract and requesting payment of the underinsured motorist coverage, attorney fees, and prejudgment interest. At Greenough Jr.'s request, arbitration was rescheduled in order to enable the parties to depose several expert witnesses.

On February 2, 2004, the criminologist was deposed. As found by the district court, "during her deposition, it was discovered that she had made a mistake in her analysis of the boots and the pedals, and that her conclusions were no longer credible". Consequently, Farm Bureau sent a letter acknowledging that the criminologist's analysis was flawed. It then tendered a check, dated February 19, 2004, for the full amount remaining owing under the policy, $50,000. In the next two months Greenough Jr. requested attorney fees, costs, and interest. The parties failed in their attempts to resolve these issues. Therefore, in May of 2004 Farm Bureau filed an answer to Greenough Jr.'s complaint. Greenough Jr. then filed a motion for summary judgment to resolve these matters. On summary judgment, the district court found that Greenough Jr. was entitled to attorney fees and costs, as well as prejudgment interest from the date of the accident until the date Farm Bureau tendered payment. Farm Bureau appealed the award of prejudgment interest.

## II.

■ Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "Where the evidentiary facts are undisputed and the trial court will be the trier of fact, summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences." *Pinehaven Plan. Bd. v. Brooks*, 138 Idaho 826, 828, 70 P.3d 664, 666 (2003) (citations omitted).

## III.

■ Idaho Code Section 28–22–104 allows for prejudgment interest at the rate of twelve percent per annum in cases where money is due on an express contract. "Pre-

judgment interest can be awarded as a matter of law from the date the sum became due in cases where the amount claimed, even though not liquidated, is capable of mathematical computation." *Dillon v. Montgomery*, 138 Idaho 614, 617, 67 P.3d 93, 96 (2003). Here, there was an express contract—the contract for first party insurance coverage—which provided "[p]ayment for loss will be made within 60 days after we receive your signed, sworn proof of loss ..." Application of the statute to the contract provision would result in the inescapable conclusion that payment under the contract was due 60 days after the proof of loss was furnished and that interest would begin to accrue on the amount owing under the policy on that date.

However, the district court, understandably relying upon contrary precedent, ruled that prejudgment interest should begin to accrue from the date of the accident. In *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 766 P.2d 1227 (1988), we established a bright-line prejudgment interest rule for underinsured or uninsured motorist claims in first party automobile insurance cases. This rule stated that "[p]rejudgment interest accrues on the general damages from the date of the accident, because that is the date [the insurer's] contractual duties accrued." *Brinkman*, 115 Idaho at 354, 766 P.2d at 1235. We followed the *Brinkman* rule in three subsequent cases. *See Schilling v. Allstate Ins. Co.*, 132 Idaho 927, 930, 980 P.2d 1014, 1017 (1999); *Emery v. United P. Ins. Co.*, 120 Idaho 244, 248, 815 P.2d 442, 446 (1991); *Walton v. Hartford Ins. Co.*, 120 Idaho 616, 622, 818 P.2d 320, 326 (1991). It seems rather obvious that in order to reach this conclusion, the *Brinkman* court construed the word "due" in I.C. § 28–22–104(1)1 to mean "accrued". The question is whether we should continue such a construction.

■ When there is controlling precedent on questions of Idaho law "the rule of stare decisis dictates that we follow it, unless it is manifestly wrong, unless it has proven over time to be unjust or unwise, or unless overruling it is necessary to vindicate plain, obvious principles of law and remedy continued injustice." *Houghland Farms, Inc. v. Johnson*, 119 Idaho 72, 77, 803 P.2d 978, 983 (1990). While it is important that parties and their counsel have predictability regard-

ing the law so that they may make informed decisions in the conduct of their affairs, when the judicial interpretation of a statute is manifestly wrong, stare decisis does not require that we continue an incorrect reading of the statute. "We have stated frequently that we will not follow prior incorrect decisions merely because the cases exist. The rule to stand by decided cases and to maintain former adjudications contemplates more than blindly following a former decision even if it is manifestly wrong." *Sherwood v. Carter*, 119 Idaho 246, 256, 805 P.2d 452, 462 (1991).

After a review of *Brinkman* and its progeny, it is apparent that these cases must be overruled in order to vindicate the "plain, obvious principles" of I.C. § 28–22–104 and to "remedy continued injustice." Therefore, to the extent that *Brinkman* and its progeny provide for prejudgment interest from the date of the accident, they are overruled. Consequently, although the district court applied the established case law in Idaho, we must vacate its opinion to the extent that it does not conform with this opinion.

■ In insurance cases money becomes due as provided under the express terms of the insurance contract. Therefore, the insured is not entitled to prejudgment interest until he or she complies with the applicable contract provisions. In the current case, the insurance policy stated that payment for loss would be made sixty days after Farm Bureau received a signed, sworn proof of loss. Therefore, the insurance money did not become due, and prejudgment interest did not begin to accrue, until sixty days after Greenough Jr. provided Farm Bureau with a sufficient proof of loss.

■ Farm Bureau argues that Greenough Jr. did not provide a sufficient proof of loss until he submitted the formal proof-of-loss form. However, Farm Bureau's insurance policy did not require its insured to complete and return any particular form. Instead, the contract stated that the insured must submit a signed, sworn proof of loss. As defined by this Court, a submitted proof of loss is sufficient when the insured provides the insurer with enough information to allow the insurer a reasonable opportunity to investigate and determine its liability. *Brinkman*, 115 Idaho at 349–50, 766 P.2d at 1230–31. The amount of information that should be provided is "proportional to the amount reasonably available to the insured." *Id.* at 350, 766 P.2d at 1231. When enough information is provided, the insurer is obligated to "investigate and/or determine its rights and liabilities" in a fair and accurate manner.[1] *Id.* An analysis to determine when a proof of loss is sufficient is a question of fact. Therefore, we remand the issue as to when Greenough Jr. provided enough information to allow Farm Bureau a reasonable opportunity to investigate and determine its liability.

### IV.

Greenough Jr. has requested attorney fees under I.C. § 41–1839(1). However, we decline to make an award since Greenough Jr. is not the prevailing party. Indeed, each party prevailed to an extent on appeal. Greenough Jr. will receive an award of prejudgment interest but it will not be for the time period provided for in the district court's decision. Farm Bureau requests attorney fees under I.C. § 12–121. However, there is no ground for finding that either party acted frivolously or unreasonably in this matter. No costs or fees will be awarded to either party.

### V.

*Brinkman* and its progeny are overruled insofar as they conflict with this ruling. Consequently, the award of prejudgment interest from the date of the accident is vacated. We remand for further proceedings consistent with this opinion.

Chief Justice SCHROEDER and Justices TROUT and BURDICK concur.

Justice EISMANN, specially concurring.

I concur in the majority opinion, and write only to add the following.

Even when payment is due, we have held that "damages must be liquidated or capable of mathematical computation for prejudgment interest to be awarded." *Dillon v. Montgomery*, 138 Idaho 614, 618, 67 P.3d 93, 97 (2003). *Accord Boel v. Stewart Title Guaranty Co.*, 137 Idaho 9, 17, 43 P.3d 768,

---

1. Indeed, Idaho Code § 41–1329 imposes obligations upon insurers to promptly investigate and determine their liability when claims are made.

776 (2002); *Opportunity, L.L.C. v. Osse-warde,* 136 Idaho 602, 609, 38 P.3d 1258, 1265 (2002); *Bouten Constr. Co. v. H.F. Magnuson Co.,* 133 Idaho 756, 762, 992 P.2d 751, 757 (1999); *Lickley v. Max Herbold, Inc.,* 133 Idaho 209, 213, 984 P.2d 697, 701 (1999); *Bott v. Idaho State Bldg. Auth.,* 128 Idaho 580, 592, 917 P.2d 737, 749 (1996); *Ervin Constr. Co. v. Van Orden,* 125 Idaho 695, 704, 874 P.2d 506, 515 (1993); *Taylor v. Herbold,* 94 Idaho 133, 137, 483 P.2d 664, 668 (1971); *Mitchell v. Flandro,* 95 Idaho 228, 234, 506 P.2d 455, 461 (1972); *Taylor v. Herbold,* 94 Idaho 133, 137, 483 P.2d 664, 668 (1971); *Farm Dev. Corp. v. Hernandez,* 93 Idaho 918, 920, 478 P.2d 298, 300 (1970). In this case, Farm Bureau tendered the full amount of the policy upon concluding that there was liability. The amount of damages that would be due if liability were established was apparently not in conflict. Farm Bureau has not argued on appeal that prejudgment interest should not have been awarded on the ground that the damages were uncertain. Therefore, the awarding of prejudgment interest in this case would not conflict with the above opinions.