766 P.2d 1227

Robert L. BRINKMAN, Jr.,
Plaintiff–Respondent–Cross–Appellant,

v.

AID INSURANCE COMPANY,
Defendant–Appellant–Cross–Respondent.

No. 17035.

Supreme Court of Idaho.

Dec. 22, 1988.

Nelson, Rosholt, Robertson, Tolman & Tucker, Twin Falls, for defendant-appellant-cross-respondent. Terry Thomas Uhling argued.

Hepworth, Nungester, Felton & Lezamiz, Twin Falls, for plaintiff-respondent-cross-appellant. John C. Hohnhorst argued.

HUNTLEY, Justice.

This appeal involves the determination of when an accident victim's insurer may be required to pay claimant's attorney fees under I.C. § 41-1839 and more particularly, what procedural actions are required to invoke that statute, and how attorney fees are to be calculated. The appeal further involves issues of the applicability of the collateral source doctrine and when and to what extent prejudgment interest may appropriately be awarded.

### BACKGROUND OF THE APPEAL

Robert Brinkman, an insured of Aid Insurance Company, was severely injured in an automobile accident caused by an underinsured motorist in Flagstaff, Arizona. Aid refused to pay Brinkman his policy limit of $300,000 and Brinkman filed suit, obtaining a jury award of $156,018.16.

Brinkman's injuries occurred in a head-on collision on September 22, 1984, when a motorist crossed the center line and hit him. Brinkman sustained multiple serious orthopedic injuries and incurred $19,830.08 in medical expenses. Brinkman was also required to withdraw from his fall semester at Northern Arizona University, where he was studying to be a high school mathematics teacher and athletic trainer. Brinkman's injuries continue to cause recurrent low back pain, inability to participate in strenuous work or athletic activities and a permanent limp. Some of his injuries are degenerative and will likely require future medical expenses such as the probability of the need for a total hip replacement due to resulting premature degenerative arthritis. Aid was notified of the accident while Brinkman was still in the hospital and began investigating shortly thereafter.

According to Brinkman, Aid refused to advance any portion of his underinsured motorist coverage without fully settling his claim. After receiving several demand letters threatening the initiation of bad faith litigation, Aid advanced $5,000 under the underinsured motorist coverage on September 23, 1985, one year after the accident.

In mid to late September, 1985, Brinkman's attorney sent a "settlement brochure" to Ralph Andre, an adjustor at Aid's Denver office. The brochure contained extensive discussion of Brinkman's injuries and Aid's liability to him, biographical information, medical bills, physician reports, etc. The brochure demanded that Aid pay $305,000—the maximum of the underinsured coverage of $300,000, plus $5,000 for medical coverage. (Aid apparently did pay $5,000 from its medical payment coverage on January 2, 1985.) Aid denies receiving the settlement brochure prior to February 5, 1986—one day before Brinkman filed suit against Aid, but the trial court found, as a matter of fact, that the brochure was mailed and received in late September/early October, 1985. The settlement brochure advised that "this offer of settlement may be accepted within fifteen (15) days of your receipt of these materials, which should be regarded as 'proof of loss' under I.C. § 41-1839(1)."

The trial court found that the "proof of loss" provisions of I.C. § 41-1839 had been met, stating:

Defendant argues that simply asking for policy limits does not support the claim nor does it constitute adequate "proof of loss." This would be true except that Aid Insurance Company knew of at least $35,000.00 already expended in actual medicals, knew that Mr. Brinkman required additional surgery in the future, knew that Mr. Brinkman had missed a year's worth of school because of his injuries, and knew that Mr. Brinkman was a very active sports enthusiast and athletic trainer. Aid Insurance, knowing all these factors and having a settlement request for $300,000, was adequately placed on notice of the nature and extent of the claim being made by its insured.

Notwithstanding the fact that Aid Insurance Company disputes the amount of the claim, it is clear that enough had been presented to the defendant to invoke I.C. § 41–1839.

In fixing the amount of prejudgment interest, the court looked to I.C. § 28–22–104(1) which provides for prejudgment interest on "money due by express contract." The court agreed with Brinkman that this case constituted a contract action but found "obvious tort aspects," which could not be ignored, and further found that it would be inequitable to award prejudgment interest for the entire amount due, because many of the damages were not readily ascertainable and were not "liquidated." The court found that Brinkman was entitled to prejudgment interest on the medical bills which became due and owing prior to suit and were not timely paid by Aid.

In sum, the jury returned a verdict awarding Brinkman $156,018.16, representing benefits due him pursuant to his underinsured motorist policy with Aid. In post trial motions, Aid sought relief from the trial court's award of $52,006.05 in attorney fees, claiming the decision was not consistent with I.C. § 41–1839. Aid further contended the award of $7,622.11 in prejudgment interest pursuant to I.C. § 28–22–104, and the failure to grant an offset against the verdict in the sum of $15,000 (representing the insurance proceeds which were received from the underinsured tortfeasor) constituted error. Aid also raises as error the court's refusal to prohibit Brinkman from offering evidence at trial regarding additional education expenses incurred as a result of his injury, which Aid contended would be paid by a collateral source in the form of a tuition waiver scholarship. Brinkman cross-appeals the trial court's refusal to allow prejudgment interest upon the entire amount of the jury award.

### DISCUSSION

This appeal raises five major issues which we will discuss in turn.

### I.

The first issue is whether the trial court properly awarded attorney fees to Brinkman under I.C. § 41–1839.

In essence, I.C. § 41–1839(1) provides that: any insurer which fails to pay the amount justly due under the terms of the policy within thirty days of proof of loss is liable for attorney fees. The language of this statute raises two questions: (1) the meaning of "proof of loss" and; (2) the meaning of "amount justly due."

(1) The Meaning of "Proof of Loss"

Neither I.C. § 41–1839 nor Aid's insurance policy define "proof of loss." Therefore, it is necessary to look to case law.

In *In re Death of Cole*, 113 Idaho 98, 100–101, 741 P.2d 734 (Ct.App.1987), the Court of Appeals stated"

> [s]ome jurisdictions recognize that proof of loss provisions in insurance policies do not require the claimant to present any more proof of the insured's death than would suffice to establish a prima facie case in a court of law. (Citations omitted.) Idaho statutes do not contain a definition of or a standard for "proof of loss." No Idaho cases have been cited to us, nor has our research disclosed any, which provide guidance here.

It is significant that the court in *Cole* simply said that insurance policies cannot require proof *any greater* than that which is required in a prima facie case; not that the plaintiff must provide proof *equal* to that which is required in a prima facie case of death in this state.

In total, all that I.C. § 41–1839, Aid's policy, and the Idaho case law tell us is that insurance policies cannot require more proof than is necessary for a prima facie case. The law is silent on how much proof is required. To arrive at a more definitive statement of the minimum requirement, we must examine the purpose of proof of loss statements.

The purpose of a provision for notice and proofs of loss is to allow the insurer to form an intelligent *estimate* of its rights and liabilities, to afford it an opportunity

for investigation, and to prevent fraud and imposition upon it. ('Emphasis added.)

44 Am.Jur.2d, "Insurance," § 1323, p. 250. *See also,* 3 Appleman, *Insurance Law and Practice,* § 1471, p. 147 (revised edition 1967):

> The purpose of proof of loss statements, in general, is to furnish the insurer with the particulars of the loss and all data necessary to determine its liability and the amount thereof, if any.

From these purposes, we draw the following conclusions. The insured, when required to do so under his policy, should provide the information reasonably available to him regarding his injury and the circumstances of the accident.

The amount of information provided should be proportional to the amount reasonably available to the insured. If the information provided is insufficient to give the insurer an opportunity to investigate and determine its liability, the insurer may deny coverage. Otherwise, the insurer must investigate and/or determine its rights and liabilities. The documentation is the "proof." The explanation of physical and/or financial injury is the "loss." "Loss" must be distinguished from liability. The insurer will determine its liability with the knowledge that it must be fair and accurate or suffer the consequences.

■ Although it did not define "proof of loss," Aid's insurance policy did state that a person seeking coverage must submit a proof of loss when required by Aid. In the instant case, Aid never demanded or requested a proof of loss from Brinkman. Hence, by the contractual terms of Aid's own policy, Brinkman was not required to submit a proof of loss as a condition to receipt of payment from Aid.

■ Even though not required, Brinkman did send a settlement brochure to Aid in mid to late September 1985. The brochure demanded $305,000 and generally described Brinkman's injuries and medical expenses incurred up to that time. The brochure contained particulars of Brinkman's loss. It adequately put Aid on notice pro-

viding it with enough information to investigate (note, Aid did in fact investigate), and to determine its liabilities. Aid responded by refusing to offer anything. Aid argues that it never received the brochure, but the trial court found otherwise.

In conclusion, Brinkman did not have to submit a proof of loss. However, had he been required to do so, the settlement brochure qualified as such. Now we must examine the meaning of "amount justly due."

### (2) Amount Justly Due

■ Does amount justly due mean an amount that is somehow ascertained upon the insurance company's receipt of the proof of loss, or is it the amount ultimately determined by the jury? We hold that it is the amount ultimately determined by the jury.

If the insurance company tenders an amount that is agreeable to the plaintiff, the plaintiff will accept and that will be the end of it. The question of "what amount is 'just' " only arises when the plaintiff and the insurance company cannot agree. If the plaintiff chooses to pursue the matter, the matter goes to court. The jury determines what amount is justly due. If the insurance company was right, no attorney fees will be charged. If the plaintiff was right, attorney fees will be charged. Both sides realize this when they go to court. Both sides assume an equal and inevitable risk. By its very nature, the question of what amount is justly due can only be resolved in retrospect, in a court of law, by the jury. We affirm the determination of the trial court that Brinkman is entitled to an award of attorney fees under I.C. § 41–1839.

### II.

The next issue is whether the district court abused its discretion in awarding Brinkman $52,006.05 in attorney fees.

Parties appealing a trial court's award of attorney fees bear the burden of demonstrating a clear abuse of a trial court's discretion. *Tanner v. Estate of Cobb,* 101

Idaho 444, 446, 614 P.2d 984 (1980). A trial court's award of attorney fees will not be reversed absent a showing that the trial court abused its discretion in arriving at the amount awarded.

I.R.C.P. 54(e)(3) outlines a list of eleven factors which the trial court "shall *consider* ... in determining the amount of such fees." (Emphasis added.) This section does not require written findings on each factor; rather, it simply requires that each factor be "considered." The word is "considered." The rule could have read "written on," or "based on" or "determinative," but it did not. Instead, it recognizes the necessity of allowing the trial judge discretion in awarding attorney fees, which decision is primarily a fact-based consideration.

■ The rule provides a set of guidelines for the judge to "consider." Hence, failure to specifically address each separate factor does not, by itself constitute a "clear manifest abuse of discretion." It follows that the absence of any of the factors does not and cannot create a presumption that the amount awarded was clearly erroneous. A claim of manifest abuse of discretion must be affirmatively proved to be successful.

Aid claims that the trial court only considered one of the factors enumerated in I.R.C.P. 54(e)(3)—namely, subsection (e) "[w]hether the fee is fixed or contingent." Aid makes but two arguments to support this contention: first that the attorney fee award was roughly equal to the fee charged in a contingent fee contract between Brinkman and his attorneys, and secondly that the absence of written findings specifically applicable to each factor in the statute proved the factors were not considered.

We do not accept Aid's first argument because the record establishes that several of the eleven factors were argued and briefed to the court and there is no basis to conclude the court failed to consider each of the factors. It does not follow that just because the trial court only wrote on the contingent fee element it failed to consider the other factors enumerated in the stat-

ute. At the very least, this argument falls well short of proving "a manifest abuse" of discretion. An award at or near the standard contingent fee level is not necessarily inappropriate and the fact a fee is set at that level is not ipso facto proof of a manifest abuse of discretion.

Regarding Aid's second argument, it is preferable that the trial court list its specific findings on each factor in the statute. However, in a case such as this with such overwhelming and obvious evidence of the presence of the other factors, the importance of written findings on each factor is lessened. Lack of written findings, in itself, cannot be considered a manifest abuse of discretion. The significance of written findings is to provide the reviewing court with adequate information to review. Here, the profile of the record provides enough information to presume that the trial judge considered the other pertinent factors enumerated in the statute.

The appellant bears the burden of showing a manifest abuse of discretion and we cannot assume from the absence of specific writings that there was a manifest abuse. Manifest abuse of discretion must be clearly demonstrated by the party making the claim. Most importantly, this means the amount granted must be shown to be clearly erroneous. An amount equal to standard contingent fees in the same locale is not an amount that is clearly erroneous. The fact is the $52,000 awarded was what Brinkman's attorney costs actually were. Those expenses were incurred solely because Aid improperly refused to pay the claim under the contract of insurance. The amount awarded simply makes the insured whole. We find no error in the trial court's ruling on this issue.

### III.

■ Aid next urges the district court erred in holding that the $15,000 received from the tortfeasor's insurer could only be used as a setoff to reduce Aid's $300,000 limit of liability, rather than it being a setoff against the $156,018.16 damages awarded to Brinkman by the jury.

In its memorandum supporting a motion for summary judgment (filed during December 1986), Aid argued that its "limit of liability" should be reduced by the amount received from Robinson's (the tortfeasor's) insurer. In reliance upon the language of the insurance agreement, and the substance of Aid's motion, Brinkman stipulated to Aid's motion for summary judgment. Then, subsequent to the jury verdict, Aid filed a motion to reduce the jury verdict by the $15,000 which had been paid by Robertsons' insurer. Here Aid changed its position and argued that the $15,000 should be subtracted from the jury verdict rather than the limit of liability.

The trial court declined to set off the amount of the jury award by the amount received from the tortfeasor's insurance carrier, relying on the express language in Brinkman's insurance policy which provided:

> However, the limit of liability shall be reduced by all sums paid, because of the bodily injury by or on behalf of the persons or organizations who may be legally responsible ...

After applying the rules of construction applicable to insurance policies, which construe such contracts strictly against the drafter, the court concluded that the policy was not ambiguous. Therefore, it held Aid was only entitled to a setoff against its "limit of liability," ($300,000), and not to a setoff from the damage award. Aid's motion to amend the judgment by allowing the setoff was denied.

Insurance policies are first and foremost a matter of contract between the insurer and the insured. These contracts are enforceable to the extent that they are valid and legal. Aid's policy stated that "Aid's *limit of liability* shall be reduced by all sums paid because of the bodily injury by or on behalf of the persons or organizations who may be legally responsible." (Emphasis added.) The policy said nothing about reductions of jury awards. Accordingly, we hold the trial court correctly interpreted and applied the provisions of the insurance contract.

Finally, Aid's argument that failure to offset would constitute a windfall to Brinkman ignores the reality that this is a first party insurance policy claim. In *Linn v. North Idaho District Medical Service Bureau Inc.*, 102 Idaho 679, 687, 638 P.2d 876 (1981), this Court noted that the windfall argument had no application in a first party insurance contract where the insured has actually paid the insurer to assume the risk for which it now seeks compensation. Affirmed.

## IV.

■ The record establishes Brinkman had to attend school for an additional year because of the car wreck. It took him five years to finish his four-year program. Northern Arizona University absorbed the expense of Brinkman's fifth year by extending what had originally been a four-year scholarship. That fifth year's tuition, $7,622.11, was an expense caused by the accident and paid by a collateral source— Northern Arizona. Accordingly, the collateral source doctrine applies.

Generally, the collateral source doctrine is as follows:

> Where a plaintiff is compensated for his injuries by some source independent of the *tortfeasor*—insurance, for example —the general rule is that the plaintiff is still permitted to make a full recovery against the tortfeasor himself, even though this gives the plaintiff a double recovery or even a recovery for losses he never had at all.

D. Dobbs, *Law of Remedies*, § 8.10, pp. 581–82 (1973). Idaho adheres to the collateral source rule. See *Lasselle v. Special Products Co.*, 106 Idaho 170, 174, 677 P.2d 483, 487 (1983); *Swift & Co. v. Gutierez*, 76 Idaho 82, 86, 277 P.2d 559, 561 (1954); *Alesko v. Union Pacific Railroad Co.*, 62 Idaho 235, 243, 109 P.2d, 874, 878 (1941). (Emphasis added.)

Through its underinsured motorist policy, Aid contractually agreed to place itself in the shoes of a tortfeasor. The very essence of the underinsured motorist policy is that the insurance company assumes the duties and liabilities normally owed by tort-

feasors when specific tortfeasors do not have sufficient insurance (or funds) to cover the damage they cause. Hence, for purposes of the collateral source doctrine, Aid must be treated and viewed in the same light as a tortfeasor capable of compensating for the damage it has caused. It follows that the normal collateral source rationale applies. Aid cannot benefit by having its liability lessened just because Brinkman has the good (earned) fortune of receiving an extension on his tuition. The collateral source doctrine applies and Brinkman's free tuition for an additional year of education should not be set off against Aid's liability. The trial court properly precluded Aid from introducing evidence that Brinkman's additional education expense was paid by Northern Arizona.

### V.

Aid asserts the trial court erred in awarding prejudgment interest on a portion of the damages awarded by the jury. Brinkman cross-appeals, asserting that the trial court erred in failing to award prejudgment interest on the entire $156,018.16 verdict. The trial court held that prejudgment interest should be allowed as to certain fixed economic damages established by the evidence, namely the $19,522.08 in past medical costs and the $7,706 proven as additional tuition expenses.

Aid argues that the accrual of interest was tolled after Aid made a $5,000 payment on January 2, 1985 (medical coverage) a second $5,000 on September 23, 1985 (on underinsurance coverage) and a subsequent advance of $75,000 on the underinsured motorists' endorsement on November 4, 1986. Aid secondly argues that the $7,706 awarded for tuition costs should not be accorded prejudgment interest because the amount was not liquidated nor capable of being ascertained by mathematical computation.

■ In response to the first argument, this Court has held that where an insurance company tenders payment in an amount less than that which is due, the tender does not serve to stop the accrual of interest on any amounts still due an insured. *Aviation Industries, Inc. v. East and West Ins. Co. of Newhaven,* 70 Idaho 28, 32, 211 P.2d 156 (1949) the Court stated that "the amount tendered being less than the amount found due by the Court, such tender did not estop the accumulation of interest upon any part of the debt." At the time the two $5,000 payments were made, they were far less than the then outstanding medical expenses. Likewise, at the time the $75,000 was tendered, it was less than one-half of the then existing damages as later determined by the jury.

In response to Aid's argument relating to tuition, it is incorrect to claim that the extra year's tuition was not capable of being computed with mathematical certainty, because it was a figure assertainable from university publications.

■ The final issue is whether Brinkman was entitled to recover prejudgment interest upon the entire amount of the jury award.

Idaho Code § 28–22–104 governs this issue:

**28–22–104. Legal rate of interest.—(1)** When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of twelve cents on the hundred by the year on: (1) Money due by express contract.

Aid and Brinkman were parties to an express contract: the underinsured motorist policy. By the terms of this contract, Aid was obligated to compensate Brinkman for injuries sustained at the hands of an underinsured motorist. When the underinsured driver swerved across the center lane and hit Brinkman head-on, Aid's duty to pay accrued. Had Aid required a proof of loss, Aid's duty to pay would have come due when Brinkman submitted his proof of loss statement in the form of the settlement brochure. In any event, Aid's duty to pay pursuant to the insurance contract came due prior to trial.

It is significant that Aid's duty arose out of a contract between Aid and Brinkman, not out of a tort action. Because Aid contracted to insure Brinkman for up to $300,-

000 for all injuries and losses suffered at the hands of an underinsured tortfeasor, Aid is liable for prejudgment interest on the entire amount awarded by the jury. Prejudgment interest accrues on the general damages from the date of the accident, because that is the date Aid's contractual duties accrued. However, to the extent it can be established that certain fixed damages such as medical expenses were not incurred until a later date, that date establishes the commencement of the interest obligation. In sum, the entire verdict is appropriately subject to the accumulation of prejudgment interest, provided that the three payments of $5,000, $5,000 and $75,000 terminate the accrual of interest on those amounts as of the dates of their respective payment. Reversed and remanded for proceedings consistent with this ruling.

Costs to respondent, no attorney fees awarded on appeal.

BISTLINE, J., and OLIVER, J. Pro Tem., concur.

JOHNSON, Justice, concurring and dissenting.

I concur in parts I, III, and IV of the majority opinion. I dissent from parts II and V.

### PART II

I.R.C.P. 54(e)(3) requires that in determining the amount of attorney fees to be awarded the court "shall" consider the factors listed in the rule. In my view, for this Court to be able to determine whether a trial court has complied with this requirement and has not abused its discretion, the trial court must give a clear indication that the factors have been considered and what weight was given to each. Here, the trial court stated only that attorney fees were granted "in the full amount of the contingent arrangement of $52,006.05." Even though evidence and argument had been presented to the court relating to some of the other factors, I am not able to determine whether the trial judge considered the other factors, and if so, what weight was ascribed to each. I would remand for a

statement of the consideration given to the factors other than the contingent fee.

### PART V

I.C. § 28–22–104(1) provides for interest on "[m]oney due by express contract." The contract at issue here provided that Aid would pay damages that Brinkman was "legally entitled to recover from the owner or operator of any underinsured motor vehicle because of bodily injury...." Aid agreed to pay under this provision "only after the 'limits of liability' under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements...." In my view, any award of prejudgment interest must be based on these contractual provisions.

The amount Brinkman was entitled to recover from Robinson was never litigated between them. I cannot agree with the majority opinion that prejudgment interest should be awarded on the entire judgment. The Aid contract did not speak in terms of Brinkman's "loss," but in terms of the amount he was "legally entitled to recover from" Robinson. That amount was not determined until the jury verdict in this case.

As to the interest awarded by the trial court, I also do not agree. Robinson's insurer paid Brinkman the $15,000 limits of Robinson's liability policy on September 26, 1985. Under the underinsured coverage of the Aid policy, Aid had no obligation to pay Brinkman anything until that payment was made. By September 23, 1985, Aid had paid Brinkman $10,000—$5,000 from the medical payment coverage and $5,000 as an advancement from the underinsured coverage. The amounts received from Robinson's insurer and from Aid more than covered Brinkman's pretrial medical expenses of $19,522.08. Therefore, I would reverse the trial court's award of prejudgment interest as to these medical expenses.

SHEPARD, Chief Justice dissenting.

I concur in the separate opinion of Johnson, J., and write only to express my dis-

sent to that portion of the majority opinion which affirms the award of attorney fees to the plaintiff in the amount of approximately $52,000.00.

I would first note that the instant case is one involving a first-party claim of an insured against his insurance carrier. In short, plaintiff has paid a premium for insurance coverage and is entitled to recover his damages from *his* insurance carrier. Our legislature has authorized the award of attorney fees against a first-party carrier when it fails to pay *its insured* "the amount justly due." I.C. § 41–1839. It is that statutory phrase which causes analysis problems in the instant case.

This case differs from most others considered by this Court, and differs substantially from those cases cited in the majority opinion, *i.e., Decker v. Homeguard Systems,* 105 Idaho 158, 666 P.2d 1169 (1983); *Tanner v. Estate of Cobb,* 101 Idaho 444, 614 P.2d 984 (1980); *Futrell v. Martin,* 100 Idaho 473, 600 P.2d 777 (1979); *Craft Wall of Idaho, Inc. v. Stonebraker,* 108 Idaho 704, 701 P.2d 324 (Ct.App.1985). Those cases were all decided under statutes or rules of Court not involved in the instant case. As correctly noted by the trial court, the authority for the award of attorney fees in the instant case is I.C. § 41–1839, which authorizes the award of attorney fees when a policy holder has been denied "the amount justly due" under an insurance policy.

In the instant case the trial court, in its memorandum decision regarding post-trial motions, held "the handling of the claim by the defendant [AID Insurance Company] was inexcusably slow, confused and tortured." The record amply supports that statement of the trial court, and I would not disturb its ruling. However, that does not, in my view, resolve the issue which is presented in the instant case. The opinions of this Court have in the past affirmed the award of attorney fees to an insured who has been denied payment under a first-party insurance contract. However, none of those cases have engaged in any analysis of the particular statute, nor the circumstances under which attorney fees should be awarded to an insured, nor does today's majority opinion.

In the instant case plaintiff demanded the policy limits of $305,000.00, which amount coincided with the total coverage under the policy. The record reveals that the final settlement offer of plaintiff Brinkman was made in March of 1987 in the amount of $225,000.00. During the first nine months of 1985 Brinkman had received $25,000.00 from insurance carriers. It was not until November of 1987 that AID offered $75,000.00 in settlement of the Brinkman claim, and tendered such amount into court. That tender was made approximately seven months after the filing of the instant action. Following trial the jury returned a verdict of approximately $156,000.00 in favor of Brinkman.

In short, the jury verdict was approximately $81,000.00 above the amount finally offered by AID, but approximately $69,000.00 less than Brinkman's final offer of settlement. No case is cited by either party indicative of a clear ruling of this or any other court in such a situation. It is incumbent upon an insurer to deal fairly with a person who has paid a premium for coverage, and who has sustained damage which is included within the coverage. Such a view does not, however, provide resolution to problems confronted in a case under the instant circumstances. If an insured sustains damage, claims $100,000.00 from his carrier, and the carrier responds with an offer of $5,000.00, at what point should attorney fees be awarded? Should attorney fees be awarded if an ultimate jury verdict is only $6,000.00, $7,500.00, $10,000.00? In my view these questions are not resolved by the majority opinion, and will continue to be vexing to both the bar and the bench of this state.

I find no assistance in previous decisions of this Court, and little in the decisions of other courts.

In *State ex rel. Grassie v. Masterson,* 221 Kan. 540, 561 P.2d 796 (1977), the court stated that the Kansas statute which provides for payment of attorney fees when it appears the insurer has refused without just cause or excuse to pay the full amount

of the loss, will only be applied when the carrier has been *"unreasonable in its position"* that will be determined upon the facts and circumstances of each particular case. *See also Helmich v. Northwestern Mutual Ins. Co.,* 376 F.2d 420 (7th Cir. 1967); *Parker v. Continental Casualty Co.,* 191 Kan. 674, 383 P.2d 937 (1963); *see also Belch v. Gulf Life Ins. Co.,* 219 Ga. 823, 136 S.E.2d 351 (1964). I find the language of those cases not providing a solution to the problem posed in the instant case. Here there was apparently no dispute as to coverage, and a substantial amount was tendered albeit in a very tardy fashion. In the instant case the final demand on behalf of the insured was slightly closer to the ultimate jury award than was the final tender by the insurance carrier. Should the rule be drawn as to reward the claimant in such circumstance? It is my belief that this Court should provide some guidelines for use by the trial court in such circumstances, rather than merely affirm or reverse an award of attorney fees and leave the bench and bar to speculate as to what the law may be in the state of Idaho.