**In re Darice JONES, Debtor.**

**Darice Jones on behalf of herself and the Estate of Darice Jones, Plaintiff,**

**v.**

**State Farm Mutual Auto Insurance Company, Defendant.**

**Bankruptcy No. 07–01203–JDP.
Adversary No. 08–6050.**

United States Bankruptcy Court,
D. Idaho.

Feb. 10, 2009.

See also 2009 WL 513741.

458

Kurt Holzer, Holzer Edwards, Chartered, Boise, ID, for Plaintiff.

Julianne S. Hall, Gjording & Fouser, Boise, ID, for Defendant.

## MEMORANDUM OF DECISION AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JIM D. PAPPAS, Bankruptcy Judge.

### Introduction

Before the Court for disposition is Plaintiff Darice Jones' Motion for Summary Judgment. Adv. Docket No. 9.[1] After briefing by the parties, the Court conducted a hearing concerning this motion on November 18, 2008, and took the issues under advisement. Having fully considered the record and arguments of the parties, this Memorandum will constitute the Court's proposed findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 9033.[2]

---

1. For the sake of clarity, when the Court refers to the docket in the adversary proceeding, it will denote the docket as "Adv. Docket". When referring to the underlying bankruptcy docket, the Court will use the designation "BK Docket".

2. In a separate decision, the Court has concluded that this action is, for jurisdictional purposes, a non-core "related to" proceeding. Since Defendant has not consented to entry of a final judgment by the bankruptcy court, pursuant to 28 U.S.C. § 157(c), this Court must submit its proposed findings of fact, conclusions of law, and recommendation to the district court for entry of a judgment. Fed. R. Bankr.P. 7052; 9033. At the appropriate time, upon resolution of remaining issues discussed below, the Court will make its submission to the district court.

## Legal Standard for Resolution of Summary Judgment Motions

Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c), incorporated by Fed. R. Bankr.P. 7056; *Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 81 (Bankr.D.Idaho 2003) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir.2001)).

The Court does not weigh evidence in resolving such motions, but rather determines only whether a material factual dispute remains for trial. *Leimbach*, 302 B.R. at 81 (citing *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir.1997)). A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party. A fact is "material" if it might affect the outcome of the case. *Id.* (citing *Far Out Prods.*, 247 F.3d at 992).

The initial burden of showing there is no genuine issue of material fact rests on the moving party. *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr.D.Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998)). If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## Proposed Findings of Fact

The following facts, appearing from the record, are either undisputed or, as required by the case law discussed above, viewed in a light most favorable to the Defendant, the non-moving party.

On March 3, 2004, Plaintiff Darice Jones was involved in an automobile accident with Goldie L. Patterson. Ms. Patterson was at fault.

Plaintiff retained counsel, and on February 28, 2006, she sued Ms. Patterson in state court. Ms. Patterson was insured by Allstate Insurance Company ("Allstate"). Ms. Patterson's insurance policy limited Allstate's liability for her negligence to $25,000 per incident. Plaintiff incurred approximately $60,000 in medical expenses as a result of injuries suffered in the accident.[3]

Plaintiff filed a chapter 7 bankruptcy petition on August 2, 2007.[4] BK Docket No. 1. Gary L. Rainsdon was appointed to serve as chapter 7 trustee. On November 14, 2007, the Court approved the trustee's employment of Plaintiff's state court counsel, Mr. Holzer, to serve as special counsel to represent both Plaintiff and the trustee to pursue collection of damages arising from Plaintiff's personal injury. BK Docket No. 26.

Plaintiff was insured under a policy issued by Defendant (the "Policy"). Adv. Docket No. 26, Ex. 9. The Policy provided underinsured motorist ("UIM") coverage benefits for Plaintiff in the amount of $25,000, as well as medical payments bene-

---

**3.** Although Defendant formally disputes this fact, *see* Adv. Docket No. 24, ¶¶ 11, 14, its agent stated in a letter to Plaintiff's counsel that "we believe that the value of Ms. Jones' claim is at least $60,000." Adv. Docket Nos. 11, Ex. B and 26, Ex. 12. Moreover, as discussed below, the precise amount of Plaintiff's medical expenses is not material to resolution of the issues raised by Plaintiff's motion.

**4.** Case No. 07–01203–JDP.

fits in the amount of $10,000. Adv. Docket Nos. 11, Ex. A, and 26, Ex. 3.

On March 27, 2008,[5] Plaintiff's lawyer sent Defendant's representative a letter containing various documents to support a claim for UIM benefits under the Policy, including discovery responses from the state court action, and medical records and bills.[6] Adv. Docket No. 26, Ex. 10. Although the record does not indicate a specific date, at some point, Defendant paid $10,000 directly to Plaintiff's medical providers. Adv. Docket No. 26, Ex. 8. That amount was later reimbursed to Defendant by Allstate.

On June 11, 2008, Allstate offered to pay the remaining funds available under the liability coverage of the Patterson policy to Plaintiff.[7] BK Docket No. 33, Ex. A. Plaintiff's attorney informed Defendant about the Allstate offer in a letter dated June 12, 2008. Adv. Docket No. 26, Ex. 4. In that letter, counsel sought Defendant's permission to accept Allstate's policy limits offer. The letter also demanded that Defendant pay Plaintiff the $10,000 in medical payments benefits, together with the $25,000 UIM benefits, as provided by the Policy. When Defendant did not pay, on July 15, 2008, Plaintiff, acting individually and on behalf of her bankruptcy estate, commenced this adversary proceeding against Defendant. Adv. Docket No. 1. In the Complaint, Plaintiff sought judgment against Defendant for the $25,000 UIM benefits, the $10,000 medical benefits, plus prejudgment interest, and attorney fees and costs pursuant to Idaho Code § 41–1839. *Id.*

On July 25, 2008, forty-two days after the June 12, 2008 letter, and ten days after this adversary proceeding was commenced, Defendant paid Plaintiff $35,000. Adv. Docket No. 26, Ex. 7.

On August 4, 2008, Plaintiff filed an Amended Complaint in this action. In light of Defendant's payment, it sought only prejudgment interest in the amount of $483.42, as well as reimbursement of Plaintiff's attorney fees and costs in the amount of $11,827.80. Adv. Docket No. 5. Defendant responded on September 4, 2008 with a motion to dismiss for lack of jurisdiction and for other relief. Adv. Docket No. 8. Plaintiff then filed the instant motion for summary judgment. Adv. Docket No. 9. In a companion decision and order entered this same date, the Court has denied Defendant's motion to dismiss. *See* Memorandum Decision dated February 10, 2009, Adv. Docket No. 29.

### Proposed Disposition of Issues and Conclusions of Law

In this action, Plaintiff seeks to recover from Defendant the prejudgment interest accruing on her claim under the Policy, and reimbursement of her attorneys fees

---

5. The Amended Complaint alleges that this letter was sent on March 27, 2007. Adv. Docket No. 5, ¶ 15.

6. For unexplained reasons, in this action, Defendant disputes that this letter and submission of documents constitutes a "primary proof of loss". Adv. Docket No. 24, ¶¶ 9–10. In his letter to Defendant accompanying the documents, Plaintiff's counsel states "[t]hese are the primary proof of loss for Ms. Jones." Adv. Docket Nos. 26, Ex. 10, and 11, Ex. D. This characterization was reiterated in a July 1, 2008 letter to Defendant. Adv. Docket No.

26, Ex. 11. The record contains no evidence to show that Defendant disputed that the submission constituted a primary proof of loss at the time. In any event, whether the term "primary proof of loss" is disputed or not is immaterial here. As discussed below, while the term "proof of loss" is found in the applicable statute, it is not necessarily found in the provisions of the Policy.

7. The Court approved this settlement between the trustee, through his special counsel, and Allstate. BK Docket No. 43.

and costs, all pursuant to Idaho Code § 41–1839. That statute provides:

Any insurer issuing any policy, certificate or contract of insurance, surety, guaranty or indemnity of any kind or nature whatsoever, which shall fail for a period of thirty (30) days after proof of loss has been furnished as provided in such policy, certificate or contract, to pay to the person entitled thereto the amount justly due under such policy, certificate or contract, shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.

Idaho Code § 41–1839(1).

■ In *Martin v. State Farm Mut. Auto. Ins. Co.*, 138 Idaho 244, 61 P.3d 601, 604 (2002), the Idaho Supreme Court explained that the purpose of Idaho Code § 41–1839 is:

to provide an incentive for insurers to settle just claims in order to reduce the amount of litigation and the high costs associated with litigation. *Hansen v. State Farm Mut. Auto. Ins. Co.*, 112 Idaho 663, 735 P.2d 974, 982 (1987). This Court has held that the statutory attorney fee is not a penalty but is an additional sum rendered as compensation when the insured is entitled to recover under the insurance policy, "to prevent the sum therein provided from being diminished by expenditures for the services of an attorney . . . ." *Halli-*

day v. Farmers Ins. Exchange, 89 Idaho 293, 404 P.2d 634, 637 (1965).

*Martin*, 61 P.3d at 604.

■ For Plaintiff to recover from Defendant under this statute, she must demonstrate that: (1) she provided a proof of loss to Defendant as required by the insurance policy; and (2) Defendant failed to pay an amount justly due under that policy within thirty days of such proof of loss. *Parsons v. Mutual of Enumclaw Ins. Co.*, 143 Idaho 743, 152 P.3d 614, 617–18 (2007); *Martin*, 138 Idaho 244, 61 P.3d 601, 604 (2002).[8]

Plaintiff contends that all elements of the statute have been met with respect to her claim against Defendant. Defendant argues that Plaintiff's proof of loss was deficient in several respects, and therefore, its payment to Plaintiff was not late under the statute.

### 1. *Proof of Loss.*

■ Plaintiff must show she provided an adequate proof of loss to Defendant as required under the terms of the Policy. Plaintiff maintains that she did so with the information provided in her attorney's letter to Defendant's representative dated March 27, 2008, as supplemented by his letter sent on June 12, 2008.

Defendant contends Plaintiff's proof of loss was deficient because she failed to provide Defendant a copy of various documents from Plaintiff's bankruptcy file. According to Defendant, this failure contravenes three provisions of the Policy. The first policy provision cited by Defendant requires that Plaintiff "cooperate with [Defendant], and when asked, assist [De-

---

**8.** While other requirements have at times been read into the statute, the Idaho Supreme Court has rejected those additions. *Martin*, 138 Idaho at 247, 61 P.3d 601 (rejecting requirement that the insurer's failure to pay must compel the insured to bring suit against the insurer in order to recover for the loss); *Assoc. Discount Corp. of Idaho v. Yosemite Ins. Co.*, 96 Idaho 249, 526 P.2d 854 (Idaho 1973) (rejecting requirement of evidence that insurer has acted unreasonably or unjustly).

fendant] in: (b) securing and giving evidence". Adv. Docket No. 26, Ex. 9 p. 5. Second, Defendant notes that Plaintiff must "give [Defendant] all the details about the death, injury, treatment and other information we need to determine the amount payable." *Id.* Finally, Defendant points out that the Policy required Plaintiff to "send [Defendant] at once a copy of all suit papers if the *person* sues the party liable for the accident for damages." *Id.* (emphasis in original; designates a defined term within the Policy). *Id.*

There is no question that Defendant asked for the bankruptcy papers, and Plaintiff declined to provide them. In his June 12, 2008 response to the letters from Plaintiff's attorney, Defendant's claims representative requested that Plaintiff's attorney provide Defendant copies of the petition, schedules and other filings made by Plaintiff in the bankruptcy court. Adv. Docket No. 26, Ex. 5. Defendant's agent sent another letter to Plaintiff's attorney, dated July 3, 2008, explaining that, in his words, Plaintiff's case represented "unique circumstances" and that the bankruptcy court filings were "critical to being able to understand our insured's claim" and once again requesting that Plaintiff provide the bankruptcy documentation. Adv. Docket No. 26, Ex. 12.

Plaintiff's attorney responded with a letter dated July 8, 2008 which, among other things, reminded Defendant's agent that (1) the information from Plaintiff's bankruptcy file Defendant had requested was readily available to the public (and to Defendant) through this Court's internet website, (2) that the thirty-day clock was running on Defendant's obligation to make payment to Plaintiff on her claim under

the Idaho statutes, and (3) that he intended to sue Defendant if payment was not timely made. Adv. Docket No. 26, Ex. 6.

Defendant then sent a July 14, 2008 letter to Plaintiff's attorney, this time from a different representative, indicating that he "was not aware the needed bankruptcy information is available to State Farm online" and that while he had attempted to access the bankruptcy court's electronic files, he had been unsuccessful in finding "anything to do with the court proceedings on Mr. [sic] Jones or the bankruptcy estate." Adv. Docket No. 26, Ex. 13. The representative chided Plaintiff's attorney, noting that "I can't believe that as the legal representative for the estate you don't have the requested information readily available to provide to us." The representative then sought "directions for obtaining the information on-line . . . ." *Id.*

Plaintiff never provided the requested documents, and Defendant eventually made payment to Plaintiff on July 25. Defendant argues that it needed documents from Plaintiff's bankruptcy file in order to evaluate Plaintiff's claim under the policy, and contends that Plaintiff failed to provide them in violation of her duties under the Policy. Therefore, Defendant argues Plaintiff never submitted an adequate proof of loss to Defendant.

The Policy does not define what constitutes a proper "proof of loss," nor is that term defined by statute.[9] But the case law is clear about the purpose served by a proof of loss. In *Brinkman v. Aid Ins. Co.,* 115 Idaho 346, 766 P.2d 1227 (1988) (*overruled in part by Greenough v. Farm Bureau Mut. Ins. Co. of Idaho,* 142 Idaho 589, 130 P.3d 1127 (2006)), where

9. Idaho Code § 41–1831 provides that an insurer "shall furnish, upon written request of any person claiming to have a loss under an insurance contract issued by such insurer, forms of proof of loss for completion by such person . . ." There is no indication that Plaintiff ever requested such forms, or that Defendant ever provided them.

the relevant insurance policy likewise included no definition of "proof of loss," the court stated:

> The purpose of a provision for notice and proofs of loss is to allow the insurer to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it.

*Brinkman,* 766 P.2d at 1230–31 (citing 44 Am.Jur.2d, "Insurance," § 1323, p. 250). The *Brinkman* court later reiterated that "[t]he purpose of proof of loss statements, in general, is to furnish the insurer with the particulars of the loss and all data necessary to determine its liability and the amount thereof, if any." *Id.* at 1231 (citing 3 Appleman, *Insurance Law and Practice,* § 1471, p. 147 (revised edition 1967)). Finally, after considering the foregoing statements, the *Brinkman* court concluded:

> From these purposes, we draw the following conclusions. The insured, when required to do so under his policy, should provide the information reasonably available to him regarding his injury and the circumstances of the accident. The amount of information provided should be proportional to the amount reasonably available to the insured. If the information provided is insufficient to give the insurer an opportunity to investigate and determine its liability, the insurer may deny coverage. Otherwise, the insurer must investigate and/or determine its rights and liabilities. The documentation is the "proof." The explanation of physical and/or financial injury is the "loss."

*Brinkman,* 766 P.2d at 1231.

The Court will assume that Defendant was justified in requesting information about Plaintiff's bankruptcy filing in responding to her claim under the Policy. Perhaps Defendant was concerned about whether Plaintiff or the trustee should properly be paid any benefits. But even so, it must also be kept in mind that the Policy clearly provides that "[b]ankruptcy or insolvency of the ***insured*** or his or her estate shall not relieve us of our obligations." Adv. Docket No. 26, Ex. 9 p. 22 (emphasis in original; designates a defined term within the Policy). While perhaps bearing on *to whom to pay* the benefits under the Policy, Defendant cannot argue that its duty to pay in the first instance was impacted by Plaintiff's bankruptcy filing.

As a matter of convenience, perhaps even professional courtesy, Plaintiff's attorney likely should have provided the bankruptcy filings to Defendant's claims representatives. Still, all the documentation requested by Defendant's agents from Plaintiff's attorney are to be found in this Court's electronic files, freely available to the public by computer via its internet website. In terms of promoting an expeditious resolution of Plaintiff's claim, her attorney was not unjustified in asking Defendant to consult the Court's file, rather than undertaking to print and provide hard copies of the bankruptcy filings. That Defendant's professional claims agents were "unaware" of the existence of the free public electronic court records, or that they lacked the ability to use the website or needed "directions" on how to access those records, if true, reflect business decisions made by Defendant, not matters that should be allowed to prejudice Plaintiff's right to prompt payment of her claims. Put another way, while Defendant's need for information from Plaintiff's bankruptcy file may have been reasonable, Defendant's representatives' insistence that Plaintiff's attorney provide them hard-copy documents, coupled with their apparent failure to simply access the public records themselves, was not reasonable. Accordingly,

Plaintiff's failure to provide bankruptcy court documents did not amount to a violation of any of the provisions of the Policy, nor render Plaintiff's proof of loss deficient under the Idaho statute. Under these circumstances, the Court declines to bless Defendant's failure to pay Plaintiff promptly solely because of its agents' preference for paper copies of readily available electronic public records.

2. *Commencement of the Thirty Days.*

Defendant raises an additional argument about the adequacy of Plaintiff's proof of loss. Plaintiff contends that she submitted information to Defendant that constituted a proper proof of loss, and thus activated the thirty-day clock for payment of her claim, at the time her counsel sent his June 12, 2008 letter to Defendant's claims representative. Defendant contends that its duty to make payment of UIM benefits did not arise at that time because Allstate had not as yet tendered its full liability policy limits. The Court disagrees with Defendant.

■■■ It is true that the Policy provides that Defendant's obligation to pay the UIM benefits to Plaintiff did not arise until Allstate, the adverse driver's insurer, paid the limits of its policy.[10] However, under the statute, the time limit for payment is not based upon satisfaction of this condition. Instead, Idaho Code § 41–1839(1) provides that the thirty-day clock began to run when Plaintiff submitted a proper proof of loss to Defendant. That Allstate had offered to pay its policy limits,

but had not actually given Plaintiff a check, did not affect the date of Plaintiff's submission of her proof of loss. Recall, the Idaho courts have held that "[i]f the information provided [by the insured to the insurer] is insufficient to give the insurer an opportunity to investigate and determine its liability, the insurer may deny coverage. *Otherwise, the insurer must investigate and/or determine its rights and liabilities."* *Brinkman,* 766 P.2d at 1231 (emphasis supplied).

In the March 27, 2008 letter, Plaintiff had already submitted information to Defendant concerning the details of the accident, as well data and documentation concerning her medical bills. Defendant never disputed that Plaintiff's total damages would exceed the liability limits in Patterson's Allstate policy. Then, in the June 12, 2008 letter, Plaintiff's attorney confirmed to Defendant that Allstate had indeed made a policy limits offer to Plaintiff. At that point, had it elected to do so, Defendant had all the information available it needed to "investigate and determine its rights and liabilities" to Plaintiff. Presumably, a simple phone call from Defendant to Allstate would have allowed Defendant to confirm that a policy limits payment was being made by Allstate. In short, the letter to Defendant of June 12, 2008 was the final piece of information necessary to enable Defendant to effectively investigate and determine its liability.

■■■ In sum, the Court concludes that, as a matter of law,[11] Plaintiff submitted an

10. Plaintiff's UIM policy provides that "THERE IS NO COVERAGE UNTIL THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY BONDS AND POLICIES THAT APPLY HAVE BEEN USED UP BY PAYMENT OF JUDGMENTS OR SETTLEMENTS." Adv. Docket No. 26, Ex. 9 p. 12 (capitalization in original).

11. The question of when a proof of loss is sufficient is ordinarily a question of fact. *Greenough v. Farm Bureau Mut. Ins. Co. of Idaho,* 142 Idaho 589, 130 P.3d 1127, 1131 (2006). However, "if the evidence reveals no disputed issues of material fact, what remains is a question of law ...." *Cordova v. Bonneville County Joint School Dist. No. 93,* 144

adequate proof of loss to Defendant on June 12, 2008, and that Defendant had thirty days from that date to pay Plaintiff her benefits under the Policy.

### 3. *Amount Justly Due.*

▮ To recover under Idaho Code § 41–1839(1), Plaintiff must show that Defendant failed to pay her the amount justly due under the Policy within thirty days after the date she furnished a proper proof of loss to Defendant.

Plaintiff contends that the $25,000 limit of her UIM benefits under the Policy, plus the $10,000 in medical payments benefits, constituted the amount justly due to her in this case, since her medical bills alone exceeded those amounts. Defendant, on the other hand, insists that it never agreed with Plaintiff about what amount was justly due to Plaintiff under the Policy, that Defendant voluntarily paid Plaintiff the $35,000, and thus, the clock in Idaho Code § 41–1839 never began to run.

Accepting Defendant's interpretation would basically render Idaho Code § 41–1839(1) a toothless statutory tiger. Under Defendant's view, an insurer could simply decline to agree with its insured about the amount justly due, and then argue that lacking such an agreement, the statutory payment deadline did not operate. The Court declines to presume this sort of result was intended by the Idaho legislature in adopting Idaho Code § 41–1839(1).

Defendant further contends that, absent an agreement, a jury or arbitrator necessarily must determine what amount is "justly due." It argues that, in this case, a genuine question existed about whether Plaintiff was entitled to $35,000, because

only $25,000 of that amount was UIM coverage. The remaining $10,000 paid by Defendant to Plaintiff represented medical payments coverage, which is generally intended to be paid directly to medical providers, and which is what occurred in this case. Defendant argues that the fact that it later received reimbursement from Allstate for those medical benefits payments did not mean that Defendant should have to pay those medical benefits to Plaintiff directly.[12] Therefore, Defendant contends, a jury or arbitrator's determination was necessary to arrive at the amount justly due.

▮ Defendant's position is surely untenable. For purposes of the statute, the amount that is "justly due" is determined either presently, when an insured accepts the amount offered by the insurance company, or retrospectively, after a jury or arbitrator determines the amount. *See, Martin,* 61 P.3d at 605; *Walton v. Hartford Ins. Co.,* 120 Idaho 616, 818 P.2d 320 (1991); *Brinkman,* 766 P.2d at 1231. The Idaho Supreme Court has stated that the question of "what amount is 'just' only arises when the plaintiff and the insurance company cannot agree." *Brinkman,* 766 P.2d at 1231. On the other hand, if "the insurance company tenders an amount that is agreeable to the plaintiff, the plaintiff will accept and that will be the end of it." *Id.* Put another way,

> If the amount tendered by the insurer is unconditionally accepted by the insured, then it will represent the "amount justly due" and the case ends.... But if the insurance company makes no tender within thirty days, or makes a tender that is substantially less than the arbi-

Idaho 637, 167 P.3d 774, 777 (2007) (quoting *Robison v. Bateman–Hall, Inc.,* 139 Idaho 207, 76 P.3d 951, 953 (2003)).

**12.** Defendant takes this position despite the fact that the reimbursement it received from Allstate was deducted from the $25,000 liability coverage Allstate later paid to Plaintiff.

trators' eventual award, the insurance company is liable for a reasonable amount of the insured's attorney fees, as compensation to make the insured whole.

*Martin*, 61 P.3d at 605.

Here, Defendant tendered $35,000 to Plaintiff, which she accepted as the amount justly due to her for benefits under the Policy. Indeed, this was the amount she sought to collect from Defendant from the beginning. The fact that Defendant may have had internal misgivings about what amount was due to Plaintiff under the Policy is of no consequence under these circumstances.[13] The statute and case law do not require an agreement by insured and insurer in advance of the payment. If the insurer tenders an amount that is accepted by the insured, the amount justly due is decided at that moment. Such was the case here. Thus, the Court concludes that the amount justly due was $35,000—the amount paid by Defendant and accepted by Plaintiff.

### 4. *Attorneys Fees.*

■ The statute provides that in the event an insurer fails to pay the amount justly due within thirty days after proof of loss has been furnished by the insured, the insurer:

> shall in any action thereafter brought against the insurer in any court in this state for recovery under the terms of the policy, certificate or contract, pay such further amount as the court shall adjudge reasonable as attorney's fees in such action.

Idaho Code § 41–1839(1). As the Court has determined that, as a *matter of law*, Defendant failed to pay the amount justly due to her within thirty days of her submission to Defendant of a proper proof of loss, Plaintiff is entitled to recover reasonable attorneys fees from Defendant.

Plaintiff contends that because this Court previously granted the trustee's motion to employ Mr. Holzer as special counsel for the bankruptcy estate, and because the Court approved a one-third contingency fee for his services, then a fee equal to one-third of the amounts she recovered from Defendant in this action is "presumptively reasonable" here. Adv. Docket No. 9.

■ Not so. In obedience to the Idaho statute, the Court must "adjudge," not "presume," the reasonableness of Plaintiff's requested attorneys fees. To adjudge is not to presume.

■ In this respect, the Court agrees with Defendant that it must evaluate the reasonableness of Plaintiff's attorney fees utilizing the factors listed in Idaho Rule of Civil Procedure 54. That rule provides for an award of reasonable attorney fees "when provided for by any statute or contract." *Id.* The rule further provides:

> (3) Amount of Attorney Fees. In the event the court grants attorney fees to a party or parties in a civil action it *shall* consider the following factors in determining the amount of such fees:
>
> (A) The time and labor required.
>
> (B) The novelty and difficulty of the questions.
>
> (C) The skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law.

---

**13.** Indeed, *Martin* held that the thirty days "is not delayed or extended while the insurer invokes the right to arbitration under the insurance contract." *Martin*, 61 P.3d at 605.

Thus, it clearly would not be extended here while Defendant decided upon what amount to tender to Plaintiff.

(D) The prevailing charges for like work.

(E) Whether the fee is fixed or contingent.

(F) The time limitations imposed by the client or the circumstances of the case.

(G) The amount involved and the results obtained.

(H) The undesirability of the case.

(I) The nature and length of the professional relationship with the client.

(J) Awards in similar cases.

(K) The reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case.

(L) Any other factor which the court deems appropriate in the particular case.

Idaho R. Civ. P. 54(e)(3) (emphasis supplied).

■ Moreover, as the Court reads Idaho Code § 41–1839(1), Plaintiff is entitled to recover from Defendant only those reasonable attorneys fees and costs incurred for counsel's services in recovering from this Defendant. Defendant is not responsible to Plaintiff for payment of counsel fees or costs in connection with Plaintiff's pursuit of Patterson or Allstate.

■ Unfortunately, Plaintiff has afforded the Court no meaningful information to enable it to determine the amount of a reasonable attorney fee award in this context. Thus, this remains a disputed issue of fact. Accordingly, while the Court concludes that Plaintiff is entitled to recover reasonable attorneys fees and costs from Defendant under Idaho Code § 41–1839(1), the amount of such fees and costs must yet be determined pursuant to Idaho Rule of Civil Procedure 54(e)(3).

5. *Prejudgment Interest.*

■ Idaho Code § 41–1839 does not provide for recovery of prejudgment by an insured based upon an insurer's untimely payment of benefits under a policy. However, the Idaho cases have recognized an insured is entitled to an award of prejudgment interest in this context pursuant to Idaho Code § 28–22–104, which provides in pertinent part:

(1) When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of twelve cents (12¢) on the hundred by the year on:

1. Money due by express contract.

Idaho Code § 28–22–104(1); *Greenough*, 130 P.3d at 1130.

■ In this instance, Plaintiff is entitled to recover prejudgment interest from Defendant, calculated from the date Defendant became obligated to pay benefits to Plaintiff. *Greenough*, 130 P.3d at 1131 ("In insurance cases money becomes due as provided under the express terms of the insurance contract"). Here, the Policy provided that Defendant was not obligated to pay UIM benefits until Allstate had paid its policy limits. As a result, Plaintiff's award of prejudgment interest must be calculated beginning from the date that Allstate paid the balance of its liability coverage to Plaintiff.

Unfortunately, that date is not established in the record. While an image of Allstate's check, dated June 13, 2008, has been reproduced in Plaintiff's reply brief, that reproduction is not properly authenticated, and cannot be considered evidence of this fact. While the Court concludes that Plaintiff may, as a matter of law, recover prejudgment interest from Defen-

dant, the precise amount of that interest remains a material issue of fact.[14]

### Conclusion

For the reasons set forth above, based upon the undisputed material facts, the Court concludes that Plaintiff is entitled to a summary judgment for recovery of attorneys fees, costs and prejudgment interest from Defendant. Defendant's payment of the $35,000 in policy benefits to Plaintiff on July 25, 2008 was not timely under the thirty-day window provided by Idaho Code § 41-1839(1).

To determine if the Court can recommend that Plaintiff be awarded a final judgment by the district court, Plaintiff shall be afforded twenty-one (21) days from the date of this Memorandum in which to make additional submissions of affidavits in support of its request for an award of attorneys fees, costs and prejudgment interest. If it desires to do so, Defendant shall have fourteen (14) days thereafter to respond to Plaintiff's submissions. Plaintiff shall have seven (7) days thereafter to reply. No further hearing or argument shall be allowed, and after the submissions are complete, any remaining issues shall be deemed under advisement for decision.[15]

---

**14.** Defendant contends that only the $25,000 UIM benefit was due under the express terms of the contract, and thus that figure should provide the base amount for the calculation of prejudgment interest. The Court concludes, as a matter of law, that the Policy obligated Defendant to pay a total of $35,000 in this instance. As such, $35,000 is the base amount for the prejudgment interest calculation.

**15.** By this provision, the Court is not inviting the parties to make any further arguments or submissions concerning the issues resolved by this Memorandum. All further submissions should only address the amount of attorneys fees, costs and prejudgment interest Plaintiff may recover. Of course, in the alternative, the need for further proceedings can be obviated by the submission of a stipulated order approved by counsel for the parties resolving the issues in this action, or at least resolving the amount of Plaintiff's reasonable attorneys fees, costs, and recoverable prejudgment interest.